Judd **ALEXANDER** and Richard **Edwards,** on behalf of themselves and as representatives of a Class of persons similarly situated, Plaintiffs,

v.

**PRIMERICA HOLDINGS, INC.** formerly known as Primerica Corporation, The Board of Directors of Primerica Holdings, Inc., James Dimon, Irwin Ettinger, John Fowler, John Doe 1–10 (being individual members of the Primerica Holdings, Inc. Board of Directors), and ABC (being the administrator of the American Can Salaried Retiree Group Insurance Plan), Defendants.

**Civ. A. No. 89–5151.**

United States District Court,
D. New Jersey.

Feb. 25, 1993.

Robert D. Towey, Jeffrey M. Siminoff, Gerald A. Liloia, Riker, Danzig, Scherer, Hyland & Perretti, Morristown, NJ, for plaintiffs.

Harvey Kurzweil, Dewey Ballantine, New York City, Donald A. Robinson, Robinson, St. John & Wayne, Newark, NJ, for defendants.

## OPINION

LECHNER, District Judge:

This is a class action brought by plaintiffs Judd Alexander and Richard Edwards on behalf of themselves and persons similarly situated (collectively, the "Plaintiffs") against defendants Primerica Holdings, Inc. ("Primerica"), the Board of Directors of Primerica (the "Board of Directors"), James Dimon ("Dimon"), Irwin Ettinger ("Ettinger"), John Fowler ("Fowler") and ABC ("ABC") (collectively, the "Defendants").[1] Plaintiffs brought suit to declare and enforce their asserted rights to medical insurance benefits, life insurance benefits and survivor income benefits under a retirement welfare benefit plan (the "Plan") established by the American Can Company ("American Can"), a predecessor of Primerica. Plaintiffs claim Defendants have violated the provisions of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, by modifying the Plan.

Jurisdiction is specifically alleged in the Amended Complaint under section 502 of ERISA, 29 U.S.C. §§ 1132(a)(1)(B), 1132(a)(2) and 1132(a)(3)(A) & (B). Amended Complaint, ¶ 2. It is presumed jurisdiction is also alleged under 29 U.S.C. § 1132(e).[2]

Currently before the court is a motion by Defendants to strike Plaintiffs' demand for a

---

1. ABC appears to be an arbitrary designation for whatever Plaintiffs contend is the administrative body for the American Can Salaried Retiree Group Insurance Plan. Amended Complaint (the "Amended Complaint"), filed 9 January 1991, ¶ 9.

2. Section 1132(e) provides, in pertinent part:
 (1) ... [T]he district courts of the United States shall have exclusive jurisdiction of civil actions under [ERISA] brought by ... a participant, beneficiary, or fiduciary....
 29 U.S.C. § 1132(e)(1).

jury pursuant to Fed.R.Civ.P. 39(a)(2), as well as for the costs, including attorneys' fees, associated with this motion.[3] For the reasons that follow, the motion by Primerica to strike Plaintiffs' jury demand is granted; this case will proceed as a bench trial. Primerica's motion for the costs, including attorneys' fees, associated with this motion is granted.

*Facts*

### A. The Parties and the Plan

Primerica is a corporation organized under the laws of the State of Delaware; it maintains its principal place of business in the State of Connecticut. Amended Complaint, ¶ 5. Dimon, Ettinger and Fowler are or were members of the Board of Directors of Primerica. *Id.*, ¶ 8. Primerica is the surviving entity of a merger between Primerica and Primerica Corporation ("Primerica Corporation") in December 1988. *Id.*, ¶ 6. Primerica Corporation was organized under the laws of the State of New Jersey and, until April 1987, was known as American Can.[4] *Id.* Plaintiffs are either retired salaried employees of American Can or their surviving spouses. *Id.*, ¶¶ 3–4, 11.

Beginning in 1957, American Can maintained the Plan which is a retirement welfare benefits plan for qualified salaried employees who retired. *Id.*, ¶ 21. The terms of the Plan were set forth in a series of summary plan descriptions (the "SPDs") which, pursuant to ERISA, must be furnished to Plan beneficiaries. *See* 29 U.S.C. § 1022. The

benefits under the Plan included a pension, life insurance and medical insurance. Amended Complaint, ¶ 21. It is uncontroverted that Plaintiffs are former salaried employees or their surviving spouses eligible to receive retirement benefits under the Plan. It is also uncontroverted Plaintiffs received benefits under the Plan. Plaintiffs' allegations that "repeated representations were made to employees and retirees alike" that their retirement benefits would be provided by the company "for life," are, however, contested.[5] *Id.*, ¶ 22.

Plan beneficiaries are required to make mandatory monthly contributions to cover a portion of the cost of the Plan. Apparently, the amount of the monthly mandatory contributions which Plan beneficiaries are required to make was, until 1 February 1989, $5.00 per covered Plan participant.[6] *Id.*, ¶ 30. Plaintiffs allege Primerica's predecessor, American Can, had agreed the amount of those contributions would never increase. Plaintiffs allege American Can .

promised the [P]laintiffs by various means, including oral representations, publications, documents, brochures and a general course of dealing that it would provide [P]laintiffs with the protection and security of the American Can Retirement Program, including lifetime pension, life insurance and lifetime medical insurance benefits upon retirement and that the lifetime medical insurance benefits would be so provided *at a fixed, nominal cost to retirees.*

---

3. In support of their motion to strike Plaintiffs' demand for a jury trial, Defendants have submitted the following: Memorandum of Law in Support of Defendants' Motion to Strike Plaintiffs' Demand for a Jury Trial (the "Moving Brief"); Reply Memorandum of Law in Further Support of Defendants' Motion to Strike Plaintiffs' Demand for a Jury Trial (the "Reply Brief").

 In opposition to the motion by Defendants, Plaintiffs have submitted the following: Memorandum of Law in Opposition to Defendants' Motion To Strike Plaintiffs' Demand for a Jury Trial (the "Opp.Brief").

 Oral argument was heard on 22 February 1993. *See* Transcript of Proceedings, dated 22 February 1993 (the "22 Feb. 1993 Tr.").

4. Plaintiffs allege Primerica Corporation and then Primerica succeeded to all of the obligations of American Can under the Plan. *Id.*, ¶ 29. De-

fendants have disputed this allegation. *See* Answer to Amended Complaint, filed 13 February 1991, ¶ 6.

5. Defendants deny any " 'repeated representations' that the retirees' medical insurance benefits were 'for life' " were made. Defendants' Answers to Plaintiffs' Initial Set of Interrogatories (the "Primerica Inter.Ans."), No. 2.

6. It appears other changes in the monthly contribution preceded the February 1989 increase. These changes included an increase in the contribution to the medical insurance paid by retirees from $0.85 per month to $1.70 per month in December 1985, another increase to $3.55 per month in July 1973, and a further increase to $5.00 per month in January 1984. Primerica Inter.Ans. No. 3.

**1300**

Amended Complaint, ¶ 23 (emphasis added). Plaintiffs further allege these benefits were "irrevocable upon retirement" and American Can could neither unilaterally terminate any of the benefits nor unilaterally *increase the cost of the medical insurance coverage.*[7] *Id.,* ¶¶ 25–27.

Plaintiffs allege that American Can "at no time reserved to itself the right to unilaterally terminate" benefits under the Plan or to increase the cost of those benefits. *Id.,* ¶¶ 26–27. The SPDs, for their part, neither expressly prohibit nor expressly provide for raising of the amounts of the mandatory contributions. All but one SPD, however, contain the following provision:

> The Company expects to continue this Plan indefinitely, but necessarily reserves the right to amend, modify, or discontinue the Plan in the future in conformity with applicable legislation....

Affidavit of Sal Giudice, dated 6 March 1991, Ex. A at 5.

In addition, it appears most employees of American Can signed one of two forms upon registering for coverage under the Plan. These forms indicate the contribution amount for retirees was understood to be subject to change. *See* Letter from Harry Kurzweil, dated 8 October 1992 (the "8 Oct. 1992 Letter"), at 2–3.

The first form ("Form A"), is a one page form entitled "Deduction Authorization—Comprehensive Medical Plan Coverage For Retirees Receiving Benefits Under the American Can Company Plan For Salaried Employees." *See id.* Form A contains the following:

> *I understand that the monthly charge for this coverage is subject to change in the future.* If the cost of this coverage is changed, I will be notified in advance and given the option of continuing my coverage at the new monthly cost or terminating my coverage.

I request and authorize you to direct Bankers Trust Company ... to deduct from retirement payments I receive under the ... Plan amounts equal to the coverage I have indicated above and to pay these amounts to American Can.... This authorization will continue to apply until canceled by me by written notice.... This authorization will not remain in effect *if American Can discontinues extending medical coverage* to me and/or to my eligible dependant.

*Id.* (emphasis added).

The second form ("Form B") is a shorter version of Form A, entitled "Deduction Authorization Card for Retired Employees who are receiving benefits under the American Can Company Retirement Plan for Salaried Employees and who desire to obtain Major Medical Insurance Plan Coverage." *Id.* Form B contains the statement: "I want [the] Major Medical Insurance Plan coverage indicated by my check mark." *Id.* Form B then offers the retiree three options to choose from: (a) "Retiree with spouse ($7.10 + $2.72 for each dependant child)," (b) "Retirees Only ($3.55 per month *initially* )" and (c) "Retiree with Spouse ($7.10 per month *initially* )." *Id.* (emphasis added). Form B also contains language similar to Form A:

> I request and authorize you to direct Bankers Trust Company ... to deduct from retirement payments I receive under the ... Plan amounts equal to charges for such Major Medical Insurance Plan coverage and to pay over such amounts to American Can.... This request and authorization will continue to apply until canceled by me by written notice ... *notwithstanding any changes in benefits or charges or any cessation of my coverage* not communicated to you.

*Id.* (emphasis added).

On or about 9 January 1989, Primerica notified Plan beneficiaries it was increasing the amount of monthly mandatory contribu-

---

7. In addition to the changes in retiree contribution amounts, Primerica has documented a history of unilateral changes made in medical coverage under the Plan, *see* Primerica Inter.Ans. No. 3. These changes allegedly demonstrate that Primerica "at all times intended to reserve its right to amend, modify or discontinue the Plan" and that Defendants "had no fiduciary obligation to maintain the Plan or any other of Plaintiffs' welfare benefits, at specific levels or at specific costs." *Id.,* Nos. 10–11.

tions Plan beneficiaries had to make to the group medical insurance plan. Amended Complaint, ¶ 30. The contributions were increased from the then current amount of $5.00 per covered individual per month to $50.00 per covered individual per month. *Id.* The increase went into effect on 1 February 1989. *Id.* The contributions were and are automatically deducted from each Plan beneficiary's monthly pension check unless Primerica was or is notified the beneficiary intended to terminate his or her coverage. *Id.* Some members of the Plaintiffs' class apparently opted to terminate their coverage under the Plan rather than pay the higher costs following the February 1989 increase. Subsequently, Plaintiffs commenced this suit against Defendants.

### B. *The Complaint*

On 14 December 1989, Plaintiffs filed their complaint (the "Complaint"). The Complaint contains six counts—four counts under common law contract theories of recovery (the "Common Law Contract Counts") including promissory estoppel (Count One), breach of a unilateral contract (Count Two), alteration of contractually-guaranteed deferred compensation (Count Three) and unlawful alteration of vested contractual rights (Count Four), as well as two counts under ERISA for breach of fiduciary duty (Count Five) and failure to disclose reservation of rights (Count Six). *See* Complaint, ¶¶ 28–71. In the Complaint, Plaintiffs demand a "trial by jury as to all issues so triable." *Id.* at 31.

On 31 August 1990, Plaintiffs moved for class certification. *See* Notice of Motion, filed 31 August 1990. Defendants opposed the motion for certification because, *inter alia,* they argued the Common Law Contract Counts could not be litigated on a class-wide basis. Moving Brief at 4. On 15 October 1990, the motion for certification was denied without prejudice for the purpose of permitting the parties to submit briefs on whether the Common Law Contract Counts were preempted by ERISA. *See* Order, filed 15 October 1990.

In lieu of briefs concerning the pre-emption question, Plaintiffs requested and were given leave to file the Amended Complaint.

*See* Order of Magistrate Judge Ronald J. Hedges, filed 31 January 1991. The Amended Complaint deleted the four Common Law Contract Counts and, instead, asserted four counts under ERISA. *See infra* at pp. 1301–02. Thereafter, on 13 May 1991, Defendants stipulated to class certification. *See* Consent Order Regarding Certification (the "Consent Order"), filed 13 May 1991. Plaintiffs' class was certified as consisting of:

> ... [A]ll salaried retirees of American Can and their spouses, and the spouses of all deceased former employees of American Can, excluding those salaried retirees (and their spouses or surviving spouses) who were designated by American Can, as retirees of its "Packaging Sector" in connection with the sale of the packaging operations of American Can to Triangle Industries.

Consent Order at 2.

### C. *The Amended Complaint*

In Count One, entitled "Violation of Erisa Plan," Plaintiffs allege Defendants violated both ERISA and Federal common law and breached their contractual obligations under the Plan by unilaterally increasing the amounts of the mandatory contributions to the Plan. Amended Complaint, ¶¶ 32–38. Plaintiffs state:

> Primerica ... has breached its contractual obligations and duties to [P]laintiffs under the ... Plan by unilaterally increasing the mandatory contributions for their medical insurance benefits under such Plan and by their actions violated the provisions of ERISA and the [F]ederal common law arising thereunder.

*Id.,* ¶ 36. Plaintiffs recognize the Plan is "governed by the provisions of ERISA and the controlling [F]ederal common law thereunder." *Id.,* ¶ 33.

In Count Two, entitled "Breach of ERISA by Alteration of Vested Benefits," Plaintiffs allege Primerica's unilateral increase in the amount of mandatory Plan contributions was unlawful and constituted a breach of contract. *Id.,* ¶¶ 30–44. Specifically, Plaintiffs allege the retirement benefits were vested and not subject to modification. *Id.*

In Count Three, entitled "Breach of Fiduciary Duties," Plaintiffs allege Defendants breached their fiduciary duties under ERISA, Federal common law and the Plan by unilaterally modifying the amount of mandatory Plan contributions and by "arrogating to themselves the right to unilaterally discontinue or terminate plaintiffs' retirement benefits." *Id.,* ¶¶ 45–51.

In Count Four, entitled "No Reservation of Rights Under ERISA Plan," Plaintiffs allege American Can, Primerica Corporation and Primerica failed to reserve properly their rights to modify unilaterally the Plan. *Id.,* ¶¶ 52–54. Moreover, Plaintiffs allege that, if such a right was properly reserved, Defendants "failed to adequately convey such reservation to [P]laintiffs in clear and unambiguous terms ... calculated to be understood by the average plan participant." *Id.,* ¶ 53.

Plaintiffs seek the following relief on each of the four counts of the Amended Complaint:

(i) A declaration that Primerica is obligated to continue to fund and maintain on behalf of each [P]laintiff, and to make available to each such [P]laintiff, the same level of welfare benefits including life insurance and medical insurance benefits, on the same terms which existed prior to 1 February 1989 and conditions that each such [P]laintiff was subject to prior to February 1, 1989, for the remaining lifetime of each of the [P]laintiffs.

(ii) A permanent injunction restraining Primerica ... from reducing, altering, or terminating any such welfare benefits, including life insurance and medical insurance benefits and prohibiting it from raising the cost of mandatory retiree contributions for such benefits from the pre-February 1, 1989 level;

(iii) An order requiring Primerica ... to offer to all plaintiffs who voluntarily termi-

nated their medical insurance coverage subsequent to January 1, 1989, the opportunity to reinstate such coverage, without any lapse in coverage, at the pre-February 1, 1989 cost of $5.00 per person per month;

(iv) A mandatory injunction directing Primerica ... to pay, in trust, compensatory damages in an amount sufficient to maintain the present level of pension and welfare benefits of the [P]laintiffs, for the life of the [P]laintiffs;

(v) An order compelling Primerica ... to return to [P]laintiffs all monies collected by way of increased deductions from their pension checks after February 1, 1989;

(vi) Compensatory Damages;

(vii) Punitive Damages;

(viii) Reasonable attorneys fees and costs;

(ix) Such other and further relief as the Court deems just and proper.

*Id.* at 10–12, 14–15, 17–18, 20–21. Plaintiffs also "demand a trial by jury as to all issues so triable." *Id.* at 21.

## D. *Motion For Summary Judgment*

On 25 July 1991, summary judgment was granted in favor of Primerica. *See* Letter-Opinion, filed 25 July 1991 (the "25 July 1991 Decision"), 47; Order, filed 25 July 1991, at 1–2. On appeal, the Circuit reversed and remanded the case. *See Alexander v. Primerica Holdings, Inc.,* 967 F.2d 90, 96 (3d Cir.1992). The Circuit concluded that the SPDs did not unambiguously set forth a reservation of the right by Primerica to reduce future benefits and that this ambiguity was a question of fact to be resolved at trial. *Id.* The case was remanded for "an interpretation of the [SPDs] in light of *all* relevant evidence and for the district court's further consideration of the retirees' claims."[8] *Id.* at 95 (emphasis added). The Circuit explained:

Because a Plan document does not exist and because the [SPDs] are ambiguous,[9]

---

8. In granting summary judgment, the extrinsic evidence offered by Plaintiffs was not considered in determining the meaning and intent of the "reservation of rights" language. *See* 25 July 1991 Decision at 23–26.

9. In support of their cross-motions for summary judgment, the parties relied upon the SPDs as

the operative expressions of the Plan, notwithstanding the fact that the SPDs are merely summaries of the Plan. *See* 25 July 1991 Decision at 5 n. 5. Because neither party submitted Plan documents which set forth the details of the various forms of insurance and other benefits

the district court, as the trier of fact, must determine whether the Plan provided lifetime benefits upon retirement.... In interpreting an ambiguous ERISA plan, a court may consider the intent of the plan's sponsor, the reasonable understanding of the beneficiaries, and past practice, among other things. In this regard, we note that the retirees' affidavits and documents, if believed by the district court, are sufficient to show that the Plan promised lifetime irreducible benefits.[10]

*Id.* at 96 (citations omitted).

### E. Subsequent Changes to the Plan

On 8 October 1992, Primerica notified the court and counsel for Plaintiffs that it again intended to change again the benefits under the Plan. *See* 8 Oct. 1992 Letter at 5–6. The 8 Oct. 1992 Letter stated in pertinent part:

> As we mentioned at the conference on September 22, 1992, recent accounting rule changes will require Primerica to record as a liability the value of all retiree welfare benefits, including life insurance and medical insurance. This rule, known as FAS 106, takes effect no later than January 1, 1993....
>
> We have reviewed the evidence produced in discovery since remand and we are of the view that the record supports Primerica's position that the reservation of rights in the [SPDs] was intended to permit the Company to change the cost of benefits to retirees....

> Primerica does not believe it should be required to book the significant liability required by FAS 106—effectively acting as though it had lost the case—only because the litigation will not be resolved before the rule takes effect. Consequently, the Company will soon announce that, effective January 1, 1993, the members of the class will be offered, at full·cost to the participants, several welfare plan options, including (1) the benefits plan under which they are presently covered, and (2) other group health and life insurance plans similar to those offered to all other Primerica retirees.

8 Oct. 1992 Letter at 5–6 (emphasis added).

On 26 October 1992, Primerica notified its retirees of the additional changes in benefits. *See* Letter from Kevin T. O'Reilly, dated 26 October 1992 (the "26 Oct. 1992 Letter"). The 26 Oct. 1992 Letter stated:

> With this letter, we are notifying you of an additional change in your rates; but, we are offering you some additional coverage choices as well.
>
> In 1993, Primerica will offer the following choice of coverage: 1) a newly designed program [ (the "New Plan") ] only for retirees and/or spouses over age 65 that has been designed to cost the same $50 per month as you are currently paying; 2) the programs currently offered to Primerica Corporate ... retirees, both over and under age 65 (called CCC/SB below); and 3) your current medical programs [ (the "Current Medical Plan") ], both over and

under the Plan, the motions of the parties were decided on the basis of the SPDs.

Significantly, since the decision on the cross-motions for summary judgment and the decision on appeal were rendered, continued discovery revealed the existence of Plan documents, as well as Forms A and B signed by individual members of the Plaintiff class upon registering for benefits through Primerica.

In addition, Primerica has brought to the attention of the court two affidavits by William May ("May"), a member of the Plaintiff class and former Chairman of the Board of American Can. On the basis of his former position with American Can, May asserts he has "direct personal knowledge" of the intent of the company with regard to its reservation of rights to change Plan

benefits. Affidavit of William May, sworn to 20 November 1992 (the "20 Nov. 1992 May Aff."), ¶ 4 Nevertheless, May has presented directly contradictory testimony regarding the intent issue. *See* Affidavit of William May, sworn to 29 September 1987, ¶ 3 (stating that "the Company *always* reserved the legal right to terminate any of the benefits of its retirement program at its sole discretion") (emphasis added); 20 Nov. 1992 May Aff., ¶¶ 3, 5 (stating that "at *no time* did American Can reserve the right to terminate any benefits") (emphasis added).

10. The opinion of the Circuit and this comment in particular were drafted without the benefit of review of Forms A and B and the two contradictory affidavits by William May.

**1304**

under age 65.... [11]

Effective January 1, 1993, retirees in the Primerica Group Insurance Plan for Retired Salaried Employees will begin paying premiums to cover 100% of the cost of continuing medical coverage. This decision is in line with Primerica's policy on medical coverage for retirees in those of its subsidiaries that offer continuing coverage.

26 Oct. 1992 Letter at 1.

The 26 Oct. 1992 Letter estimated the cost of the various program options for retirees as follows. The New Plan, available only to retirees over sixty-five, would cost $50.00 per person per month. *Id.* The CCC/SB plan would cost $296.00 to retirees under 65 and $100.00 to retirees sixty-five and over. *Id.* The cost of maintaining the Current Medical Plan would be $326.00 to retirees under sixty-five and $144.00 to retirees sixty-five and over. *Id.* The 26 Oct. 1992 Letter also recognized that "[s]ince the premiums for all of these programs are designed to cover 100% of the total cost, each is subject to increase in the future." *Id.*

Finally, the 26 Oct. 1992 Letter indicated that a number of additional benefits would be eliminated. *Id.* at 2. Specifically, Primerica informed its retirees in the 26 Oct. 1992 Letter that (1) the practice of "reimburs[ing] certain retirees for part of the cost of Medicare Part B" and (2) all "retiree life insurance coverage" would both be eliminated, effective 1 January 1993. *Id.*

On 2 December 1992, Defendants sent a follow-up letter to Plaintiffs further explaining the Plan changes. *See* Letter from O'Reilly, dated 2 December 1992 (the "2 Dec. 1992 Letter"), at 1–3. The cost to Plaintiffs of the various medical benefits options remained unchanged from the 26 Oct. 1992 Letter. *See* 2 Dec. 1992 Letter at 1–2. However, the 2 Dec. 1992 Letter further indicated that Plaintiffs'

election to continue medical coverage through Primerica after 1992 [had to be] received ... by the close of business, Wednesday, December 23, 1992. If no

election [was] received by that deadline, it [would be] assumed that [the individual] wish[ed] to discontinue [his/her] medical coverage and the coverage of any enrolled, eligible dependant effective 31 January 1991.

*Id.* at 4. The 2 Dec. 1992 Letter also warned that once a retiree chose to discontinue his or her medical coverage through Primerica, that retiree could not re-enroll in the Plan in the future. *Id.* at 2–4. Finally, the 2 Dec. 1992 Letter stated: "Primerica continues to reserve the right to change or discontinue the medical coverage it sponsors for retirees at any time." *Id.* at 5.

With regard to life insurance, the 2 Dec. 1992 Letter explained that, even though life insurance coverage was to terminate on 31 December 1992, the beneficiary of a Plaintiff who died prior to 31 January 1993 would still "be entitled to receive [the] basic and supplemental death benefit as if [the] coverage had not been terminated." *Id.* at 4. Moreover, the 2 Dec. 1992 Letter indicated that a "conversion policy" would be issued to Plaintiffs who were former recipients of the Plan's life insurance policy. *Id.* at 4–5. Under the conversion policy, an individual life insurance policy would be issued at full cost to the Plaintiffs, effective 1 February 1993. *Id.* Plaintiffs were required to apply for and pay the first premium of this new life insurance by 31 January 1993. *Id.* at 5.

*Discussion*

**A. Right to a Jury Trial Under ERISA**

Plaintiffs argue the Seventh Amendment entitles them to a jury trial on all four counts of the Amended Complaint. Opp.Brief at 1, 6. This contention is incorrect. The Seventh Amendment provides:

In suits *at common law*, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise reexamined in any Court of the United States....

11. Comparative summaries of the three plans were provided with the 26 Oct. 1992 Letter. *See* *id.* at 3–4.

U.S. Const.Amend. VII (emphasis added). As the United States Supreme Court has explained:

> The Seventh Amendment does apply to actions enforcing statutory rights, and requires a jury trial upon demand, *if the statute creates legal rights and remedies,* enforceable in an action for damages in ordinary courts of law.

*Curtis v. Loether,* 415 U.S. 189, 194, 94 S.Ct. 1005, 1008, 39 L.Ed.2d 260 (1974) (emphasis added).

 In determining the right to a jury trial, it is the procedural and remedial sections of the statute creating the right which must be examined. *Tull v. United States,* 481 U.S. 412, 417, 107 S.Ct. 1831, 1835, 95 L.Ed.2d 365 (1987); *Lorillard v. Pons,* 434 U.S. 575, 584, 98 S.Ct. 866, 872, 55 L.Ed.2d 40 (1978); *Cox v. Keystone Carbon Co.,* 861 F.2d 390, 392 (3d Cir.1988) [hereinafter "*Cox I* "]. When a particular remedial section in the statute provides only for equitable remedies, no right to a jury trial exists.[12] *Cox I,* 861 F.2d at 392 (citing *Curtis,* 415 U.S. at 194–95, 94 S.Ct. at 1008–09); *accord Pane,* 868 F.2d at 636; *Lincoln v. Board of Regents,* 697 F.2d 928, 934 (11th Cir.), *cert. denied,* 464 U.S. 826, 104 S.Ct. 97, 78 L.Ed.2d 102 (1983); *see also Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33, 41, 109 S.Ct. 2782, 2790, 106 L.Ed.2d 26 (1989) (stating that phrase "suits at common law" in Seventh Amendment is used "in contradistinction to those [suits] where equitable rights alone ... [are] recognized and equitable remedies ... [are] administered") (quoting *Parsons v. Bedford,* 28 U.S. (3 Pet.) 433, 447, 7 L.Ed. 732 (1830)). In fact, within a particular statute, the right to a jury trial might exist as to some enforcement sections and not as to others. *Cox I,* 861 F.2d at 392 (citing 5 J. Moore, *Federal Practice,* § 38–11[7] (1988)).

In the case of ERISA, the Third Circuit has recognized: "ERISA does not make any provision for a jury trial, and the sparse legislative history is not enlightening." *Cox I,* 861 F.2d at 393; *Turner v. CF & I Steel Corp.,* 770 F.2d 43, 46 (3d Cir.1985), *cert. denied,* 474 U.S. 1058, 106 S.Ct. 800, 88 L.Ed.2d 776 (1986). Nevertheless, a number of decisions by the Supreme Court and by the Third Circuit have clarified the law with regard to jury trials in ERISA cases.

Because courts are not free to create remedies outside of the scope of the "six carefully integrated civil enforcement provisions found in § 502(a) of ERISA," *see Massachusetts Mut. Life Ins. Co. v. Russell,* 473 U.S. 134, 146, 105 S.Ct. 3085, 3092, 87 L.Ed.2d 96 (1985); *Cox I,* 861 F.2d at 392, the appropriate consideration is whether the remedies afforded in Section 502(a) of ERISA, 29 U.S.C. § 1132(a)—as those remedies are applicable to this case—are of such a nature as to afford Plaintiffs a right to a jury trial. *Cox I,* 861 F.2d at 392–93.

 The Amended Complaint expressly provides that this action is dependant upon four of the six remedial provisions of ERISA: Section 502(a)(1)(B), Section 502(a)(2), Section 502(a)(3)(A) and Section 502(a)(3)(B). *See* Amended Complaint, ¶ 2; *see also* 29 U.S.C. § 1132(a)(1)–(3); Transcript of Proceedings, dated 22 September 1992 (the "22 Sept. 1992 Tr."), at 16–17 (counsel for Plaintiffs represented that "[w]e dropped all of our estoppel claims and this [case] is purely proceeding as ERISA"). As discussed below, the Circuit has expressly determined that, for each of these sections, no right to a trial by jury exists. *See, e.g., Sheet Metal Wrkrs. Local 19 v. Keystone Heating & Air Conditioning,* 934 F.2d 35, 38 (3d Cir.1991); *Cox v. Keystone Carbon Co.,* 894 F.2d 647, 649–50 (3d Cir.1990) [hereinafter "*Cox II* "], *cert. denied,* 498 U.S. 811, 111 S.Ct. 47, 112 L.Ed.2d 23 (1990); *Pane,* 868 F.2d at 636–37; *Cox I,* 861 F.2d at 393–94; *Turner,* 770 F.2d at 46–47.

Section 502(a)(1)(B) provides:

A civil action may be brought—

(1) by a participant or beneficiary—

. . . .

---

12. The question to be asked is, specifically, what kind of remedy did Congress intend to afford for plan participants or beneficiaries. *Pane v. RCA Corp.,* 868 F.2d 631, 635 (3d Cir.1989). A legal remedy would result in a right to trial by jury, while an equitable remedy would not result in such a right. *Id.* at 635–36.

(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

29 U.S.C. § 1132(a)(1)(B). The Circuit has held that relief sought pursuant to Section 502(a)(1)(B) is "patently equitable in nature" and employees who sue under ERISA are "not entitled to a jury trial under [S]ection 502(a)(1)(B)." *Cox II*, 894 F.2d at 649–50; *Pane*, 868 F.2d at 636; *Turner*, 770 F.2d at 46; *accord Nevill v. Shell Oil Co.*, 835 F.2d 209, 213 (9th Cir.1987); *Howard v. Parisian, Inc.*, 807 F.2d 1560, 1567 (11th Cir.1987); *Berry v. Ciba–Geigy Corp.*, 761 F.2d 1003, 1007 (4th Cir.1985); *Katsaros v. Cody*, 744 F.2d 270, 278 (2d Cir.), *cert. denied sub nom., Cody v. Donovan*, 469 U.S. 1072, 105 S.Ct. 565, 83 L.Ed.2d 506 (1984); *In re Vorpahl*, 695 F.2d 318, 319 (8th Cir.1982); *Calamia v. Spivey*, 632 F.2d 1235, 1237 (5th Cir.1980); *Wardle v. Central States, Southeast & Southwest Areas Pension Fund*, 627 F.2d 820, 829–30 (7th Cir.1980), *cert. denied*, 449 U.S. 1112, 101 S.Ct. 922, 66 L.Ed.2d 841 (1981).

Section 502(a)(2) provides that a participant or beneficiary may bring an action "for appropriate relief under section 1109 of this title." 29 U.S.C. § 1132(a)(2). Section 1109 provides in pertinent part:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of the assets of the plan by the fiduciary, and shall be subject to such equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

29 U.S.C. § 1109.

Although section 502(a)(2) has received considerably less attention than Section 502(a)(1), it too has been interpreted as providing only for equitable relief with no right to a trial by jury. As the Circuit stated in *Pane:* "Section 502(a)(2) simply refers to 'appropriate relief under section 1109,' and there is no reason to attribute to Congress an intention, inconsistent with the rest of [S]ection 502(a), to authorize legal rather than equitable relief." 868 F.2d at 637; *see also Motor Carriers Labor Advisory Council v. Trucking Mgmt., Inc.*, 731 F.Supp. 701, 702–03 (E.D.Pa.1990) (finding no right to jury trial for claims asserted under Section 502(a)(2)).

Finally, Sections 502(a)(3)(A) and 502(a)(3)(B) provide:

> A civil action may be brought—
>> (3) by a participant [or] beneficiary—
>> . . . .
>>
>> (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations, or (ii) to enforce any provisions of this subchapter or the terms of the plan.

29 U.S.C. § 1132(a)(3)(A)–(B). As with the other provisions of Section 502 already discussed, this Circuit has consistently held that "those causes of action authorized by [S]ection 502(a)(3) are by its terms explicitly equitable, and . . . there is no right to a jury trial for them." *Pane*, 868 F.2d at 636; *accord Sheet Metal Wrkrs.*, 934 F.2d at 38; *Cox I*, 861 F.2d at 393–94; *Turner*, 770 F.2d at 46.

Although Plaintiffs do not specify in the Amended Complaint or in their Opposition Brief which provisions of ERISA apply to which counts of the Amended Complaint,[13]

---

**13.** Count One, alleging violation of the Plan by the increase in mandatory benefit contributions, appears to be governed by Sections 502(a)(3)(A)–(B), which provide redress for violation of an ERISA Plan. *See supra* at p. 1306 (text of Sections 502(a)(3)(A)–(B)).

Count Two, alleging violation of the Plan by altering the "vested" benefits of retirees, also appears to be governed by Sections 502(a)(3)(A)–(B).

Count Three, alleging that Defendants breached their fiduciary duties under ERISA by modifying Plan benefits, appears to be governed by Section 502(a)(2), which provides a right to redress for a breach of duty by a Plan fiduciary. *See supra* at p. 1306 (text of Section 502(a)(2)).

Count Four, alleging Primerica, Primerica Corporation and American Can failed to properly reserve a right of modification under the Plan and/or failed to properly inform Plaintiffs of such

their claims rest generally on Sections 502(a)(1)(B), 502(a)(2), 502(a)(3)(A) and 502(a)(3)(B)—sections of ERISA which have been consistently interpreted by this Circuit as providing only for equitable relief. *See* Amended Complaint, ¶ 2. Accordingly, Plaintiffs have failed to establish a right to and have no basis to assert a right to trial by jury on those claims.

**B.** *Equitable Nature of Remedy Sought*

[6] Plaintiffs now attempt to re-characterize their claims as nothing more than claims for breach of contract which, they assert, are "traditionally a matter resolved by a court of law." Opp.Brief at 7–8. Plaintiffs state:

> The mere fact that an ERISA plan is involved in this case does not alter the fact that the underlying action against Primerica is a traditional breach of contract claim. ERISA plans are contracts, and it is therefore well settled that ERISA plans and their meaning are subject to traditional principles of contract law.

*Id.* at 8. Plaintiffs further state:

> Plaintiffs are entitled to a jury trial of (a) the questions of fact pertaining to the breach of contract claims against Primerica, including interpretation of some ambiguous reservation of rights language; (b) any issues of fact common to claims for breach of contract and, under [Section] 502(a)(2), for breach of fiduciary duty; and (c) Plaintiffs' claims for money damages.

*Id.* at 19.

These arguments are baseless. Even assuming Plaintiffs are correct in arguing that a traditional breach of contract claim can be maintained under ERISA and that an ERISA Plan is nothing more than a contract—arguments they have not proven, *see* *Singer v. Black & Decker Corp.*, 769 F.Supp. 911, 916–18 (D.Md.1991) (rejecting argument that breach of contract claim exists under common law of ERISA), *aff'd*, 964 F.2d 1449 (4th Cir.1992)—the nature of relief sought by Plaintiffs is clearly equitable and defeats their claim for a jury trial.

Contrary to Plaintiffs' argument, this is not a case in which a contract has been breached and compensatory damages are sought as a substitute for Plaintiffs receiving the benefit of their alleged bargain. *See* *Russell v. Salve Regina College*, 890 F.2d 484, 489 (1st Cir.1989), *rev'd in part on other grounds*, —— U.S. ——, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991); *In re Witte*, 841 F.2d 804, 807 (7th Cir.1988); *see also* J. Calamari & J. Perillo, *On Contracts*, § 11–4 at 591 (3d ed. 1987) ("[f]or breach of contract the law of damages seeks to place the aggrieved party in same *economic* position he *would* have had *if* the contract had been performed") (emphasis added). Instead, Plaintiffs seek reinstatement of the contract on its original terms. With each count of the Amended Complaint, they request:

(i) A *declaration* that Primerica is obligated to continue to fund and maintain ... the same level of welfare benefits ... on the same terms which existed prior to February 1, 1989 ... for the remaining lifetime of each of the [P]laintiffs;

(ii) A *permanent injunction* restraining Primerica ... from reducing, altering, or terminating any such welfare benefits ... and prohibiting it from raising the cost of mandatory retiree contributions for such benefits from the pre-February 1, 1989 level;

(iii) An *order* requiring Primerica ... to offer to all plaintiffs who voluntarily terminated their medical insurance coverage subsequent to January 1, 1989, the opportunity to reinstate such coverage, without any lapse in coverage, at the pre-February, 1989 cost of $5.00 per person per month;

(iv) A mandatory *injunction* directing Primerica ... to pay, in trust, compensatory damages in an amount sufficient to maintain the present level of pension and welfare benefits of the [P]laintiffs, for the life of the [P]laintiffs;

(v) An *order* compelling Primerica ... to return to [P]laintiffs all monies collected

a reservation, appears to be governed by Section 502(a)(3) for violation of an ERISA Plan and/or by Section 502(a)(1)(B), which provides means

for a plan participant or beneficiary to recover Plan benefits. *See supra* at pp. 1305–06 (text of Section 502(a)(1)(B)).

by way of increased deductions from their pension checks after February 1, 1989;

*Id.* at 1301–02, 1303–04, 1304–05, 1305–06 (emphasis added). All of this is equitable in nature.

Courts have uniformly held that claims for the instatement or reinstatement of ERISA benefits constitute equitable relief, even when couched in terms of breach of contract damages.[14] *See, e.g., Blake,* 906 F.2d at 1526; *Bair v. General Motors Corp.,* 895 F.2d 1094, 1097 (6th Cir.1990); *Daniel v. Eaton Corp.,* 839 F.2d 263, 267–68 (6th Cir.), *cert. denied,* 488 U.S. 826, 109 S.Ct. 76, 102 L.Ed.2d 52 (1988); *Pegg,* 793 F.Supp. at 286–. 87; *see also Sprague,* 804 F.Supp. at 935 (stating "[t]his court is unaware of a [F]ederal court of appeals that has held there is a right to a jury trial for claims benefits under ERISA section 502").

For instance, in *Sprague,* just as in this case, plaintiffs brought suit under Sections 502(a)(1)(B), 502(a)(2), 502(a)(3)(A) and 502(a)(3)(B), claiming that General Motors violated the terms of its health care plan and violated its fiduciary duties by reducing or eliminating certain health care coverage for retirees. 804 F.Supp. at 932. As well, the *Sprague* plaintiffs argued their claim for benefits was "actually a breach of contract claim, and, accordingly, a jury trial [was] available because the relief sought [was] legal rather than equitable." *Id.* at 935. The *Sprague* court rejected this argument and stated:

> Appellant is seeking only instatement in the Program and the payments due him

had he initially been granted participation to begin with. Thus, his action is one in equity, not in law. He, therefore, is not entitled to a jury ... merely because issues of contract law are involved in his claim.

*Id.* (quoting *Bair,* 895 F.2d at 1097).

At the heart of the relief requested by Plaintiffs in this case is reinstatement of the Plan on its original, pre-February 1989, terms. For instance, Plaintiffs seek a declaration that Primerica must maintain Plaintiffs' Plan benefits at their original level and their original cost and a permanent injunction to ensure the same. These are equitable remedies. Plaintiffs also request an order reinstating, without any lapse in coverage, those Plaintiffs who voluntarily terminated their benefits under the Plan after 1 February 1989 as a result of the increased monthly charge. This too is equitable relief.

Plaintiffs also seek an injunction requiring Primerica to pay, in trust, "compensatory damages" in an amount sufficient to maintain the Plan at its original coverage and cost levels, as well as an order requiring Primerica to return to Plaintiffs any monies collected by way of increased deductions from their pension checks. Although these asserted claims involve money and are referred to as "compensatory damages," the equitable nature of the relief sought remains.

 The existence of a money award does not necessarily constitute "legal relief." *See, e.g., Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry,* 494 U.S. 558, 570, 110

---

14. Plaintiffs argue that *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), requires contract claims brought in an ERISA context to be tried by a jury. Opp.Brief at 8–10, 14. In *Firestone,* the Supreme Court stated:

> Actions challenging an employer's denial of benefits before enactment of ERISA were governed by principles of contract law. If the plan did not give the employer or administrator discretionary authority to construe uncertain terms, the court reviewed the employee's claim as it would have any other contract claim—by looking at the terms of the plan and other manifestations of parties' intent.

489 U.S. at 112, 109 S.Ct. at 955.

Despite this language, courts have interpreted *Firestone* as not changing the law with regard jury trials under ERISA Section 502.

*See Blake v. Unionmutual Stock Life Ins. Co.,* 906 F.2d 1525, 1526 (11th Cir.1990); *Sprague v. General Motors Corp.,* 804 F.Supp. 931, 936 (E.D.Mich.1992); *Pegg v. General Motors Corp.,* 793 F.Supp. 284, 285 (D.Kan.1992). As the court stated in *Sprague:*

> The Court in *Firestone* was faced with the issue of deciding the appropriate standard for judicial review of plan administrators' interpretation of plan provisions. *Nowhere did the Court even hint that its decision was affecting the body of case law finding no right to a jury trial in ERISA actions.*

804 F.Supp. at 936 (emphasis added). It is significant, moreover, that the Third Circuit maintained its position of no jury trials under ERISA Section 502 in *Cox II,* 894 F.2d 647, a case decided eleven months after *Firestone.*

S.Ct. 1339, 1347, 108 L.Ed.2d 519 (1990); *Pegg,* 793 F.Supp. at 286; *Motor Carriers,* 731 F.Supp. at 703; *see also Curtis,* 415 U.S. at 196, 94 S.Ct. at 1009 (whether claim should be characterized as legal or equitable relief does not rest upon mere characterization of remedy in money damages). Damages are considered to be equitable relief if they are restitutionary in nature—that is, if they would restore the status quo and return a sum rightfully belonging to another. *Tull,* 481 U.S. at 424, 107 S.Ct. at 1839; *Sprague,* 804 F.Supp. at 936; *Pegg,* 793 F.Supp. at 286. Receipt of withheld benefits constitutes relief that is restitutionary and equitable in nature and does not carry with it the right to a jury trial. *Sprague,* 804 F.Supp. at 936; *Pegg,* 793 F.Supp. at 286–87. Such is the case here. Plaintiffs are seeking a reinstatement of benefits and monies which they claim were improperly withheld.[15] Although these claims involve a demand for money damages, they do not constitute "legal" relief.[16]

■ Finally, the Amended Complaint includes a demand for "compensatory damages." Although the Amended Complaint fails to specify what these damages are intended to compensate, Plaintiffs explain in their Opposition Brief that they seek out-of-pocket expenses and replacement insurance costs caused by the increased cost of Plan benefits, as well as any damages incurred as a result of Primerica's termination of life insurance benefits. Opp.Brief at 4, 17–19.

■ Although some Plaintiffs may have suffered out-of-pocket expenses upon choosing to terminate their benefits with Primerica and to seek substitute coverage, it is disingenuous to suggest, as Plaintiffs do, that this case is primarily about those damages. First and foremost, Plaintiffs want reinstatement of their health benefits at pre-February 1991 cost levels. As discussed previously, this reinstatement is equitable relief. *See supra* at pp. 1307–08. Moreover, as the Supreme Court has recognized, a monetary award incidental to or intertwined with injunctive relief can be considered to be equitable relief. *Terry,* 494 U.S. at 571, 110 S.Ct. at 1348; *accord Tull,* 481 U.S. at 424, 107 S.Ct. at 1839; *Motor Carriers,* 731 F.Supp. at 703; *see also Sprague,* 804 F.Supp. at 935 ("[e]quitable relief includes monetary damages where required to afford complete relief") (quoting *Warren,* 905 F.2d at 982).

■ As in this case, plaintiffs in *Sprague* argued that "the recovery of benefits claim is actually a breach of contract claim and, accordingly, a jury trial is available because the relief sought is legal rather than equitable relief." 804 F.Supp. at 935. The *Sprague* court rejected this argument and stated:

> The monetary relief requested by plaintiffs pales in comparison to the scope of injunc-

---

**15.** Plaintiffs argue:

> This is not a simple recovery of benefits case. Rather, it is one in which an employer obliged itself contractually to maintain benefits in ways "not mandated by ERISA." Thus Plaintiffs here seek a factual determination whether Primerica was contractually bound to provide lifetime vested benefits, and, if so, whether that contractual obligation was breached. Resolution of those matters may be appropriately put to a jury.

Opp.Brief at 13 (citations and emphasis omitted). Plaintiffs' argument that questions of fact regarding the meaning of the Plan require a jury trial is misplaced.

When the nature of relief sought is, as here, primarily equitable, a jury trial is not required merely because factual findings must be made. *See Terry,* 494 U.S. at 565 n. 4, 110 S.Ct. at 1345 n. 4 (recognizing that practical abilities and limitations of juries are not an independent basis for extending the right to a jury trial); *accord Sprague,* 804 F.Supp. at 933–34 (rejecting argument that jury is required because "federal

breach of contract issues [under ERISA Section 502] are fact intensive").

**16.** Other courts have held that "when the entitlement to money damages turns upon a finding that a trustee has breached his or her fiduciary duty, the relief becomes an integral part of an equitable action." *Motor Carriers,* 731 F.Supp. at 703; *accord Warren v. Society Nat'l Bk.,* 905 F.2d 975, 981–82 (6th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 2256, 114 L.Ed.2d 709 (1991); *Miner v. Community Mut. Ins. Co.,* 778 F.Supp. 402, 404 (S.D.Ohio 1991); *Kahnke v. Herter,* 579 F.Supp. 1523, 1527–28 (D.Minn. 1984); *see also Nedd v. United Mine Workers,* 556 F.2d 190, 207 (3d Cir.1977) ("the remedies of trust beneficiaries, against trustees or third parties, are equitable rather than legal"), *cert. denied,* 434 U.S. 1013, 98 S.Ct. 727, 54 L.Ed.2d 757 (1978). For this additional reason, any relief sought pursuant to Count Three of the Amended Complaint, which alleges that Defendants breached their fiduciary duties as Plan adminis-

tive relief sought. Plaintiffs are asking for all benefits which they have failed to receive and any other "damages" as a result of GM's actions. GM's action occurred in 1988; there has been an alleged loss of benefits for four years. Plaintiffs are also asking this court to compel GM to restore its health care program to pre-1988 status and to prevent any further changes for decades to come. Because the monetary relief would only cover a few years, while the injunctive relief would cover a period of decades, any monetary award would be incidental to injunctive relief, thereby depriving plaintiffs of a jury trial right.

*Id.* at 939. The present case provides a more compelling picture than *Sprague,* in that the "damages" allegedly suffered by Plaintiffs can only be traced to February 1989—when Plaintiffs filed suit because Primerica raised the mandatory monthly contribution from $5.00 to $50.00—while, likewise, the equitable relief sought would extend indefinitely into the future. In addition, as discussed above, the main thrust of Plaintiff' alleged relief in this case is restitution and equitable. *See supra* at pp. 1307–09. To the extent any plaintiffs have suffered individual damages, recovery of those damages is incidental to the overriding equitable relief sought by the class of Plaintiffs as a whole.[17]

■■■ Finally, to the extent Plaintiffs appear to be arguing that their "contractual" claims are actionable under Federal common law rather than ERISA, Opp. Brief at 17–19, such an argument is without merit. The Amended Complaint expressly states that jurisdiction is premised solely upon ERISA Sections 502(a)(1)(B), 502(a)(2), 502(a)(3)(A) and 502(a)(3)(B). *See* Amended Complaint, ¶ 2. Moreover, counsel for Plaintiffs have conceded and represented that all Common

Law Contract Claims have been dropped from the lawsuit. 22 Sept. 1992 Tr. at 16–17, 24–28. Thus, outside of the context of ERISA and its established case law, there is no other basis for Federal subject matter jurisdiction alleged to support a claim under Federal common law. Second, to the extent Plaintiffs seek to invoke the "Federal common law" under ERISA, such a claim "is merely a recapitulation of the [S]ection 502 recovery of benefits claim."[18] *Sprague,* 804 F.Supp. at 938. The underlying facts are the same and the recovery sought is the same. Given the Third Circuit's directive that no right to a jury trial exists under the Section 502 provisions relevant here, *see supra* at pp. 1305–07, "it would be disruptive to the statutory scheme to allow a jury trial on [P]laintiffs' functionally equivalent federal common law claims." *Sprague,* 804 F.Supp. at 938.

## C. *Request for Costs*

Primerica argues: "Because of the clarity of law on the [right to a jury] issue, Primerica respectfully requests that it be awarded all costs of this motion, including attorney's fees." Moving Brief at 17. Although Primerica cites no authority for an award of costs and fees, it is presumed it relies upon 28 U.S.C. § 1927 and *Chambers v. NASCO, Inc.,* —— U.S. ——, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991), *reh'g denied,* —— U.S. ——, 112 S.Ct. 12, 115 L.Ed.2d 1097 (1991), which provide the basis for this request.

■■■ Section 1927 of Title 28 permits a district court to impose an award of costs, expenses and attorneys' fees reasonably incurred as a result of conduct of an attorney which "multiplies the proceedings in any case unreasonably and vexatiously."[19] 28 U.S.C.

---

trators, must be considered to be equitable in nature.

**17.** Significantly, the fact that this action is maintained as a class action underscores the overriding equitable nature of the relief sought. Compensable out-of-pocket loss is unique to individual Plaintiffs and may not be sought on a class-wide basis. *See Trevino v. Holly Sugar Corp.,* 811 F.2d 896, 905 (5th Cir.1987); *Retired Chicago Police Ass'n v. Chicago,* 141 F.R.D. 477, 186 (N.D.Ill.1992); *Gonzalez v. Brady,* 136 F.R.D. 329, 331 (D.D.C.1991). It would appear, in fact, that this specific concern prompted Plain-

tiffs to drop their Common Law Contract Claims in favor of seeking equitable class-wide relief under ERISA Section 502. *See* Moving Brief at 4 & nn. 4–5.

**18.** Plaintiffs concede that the "claim for breach of contract ... may be conveniently pigeon-holed in subsection (a)(1)(B) [of Section 502]." Opp. Brief at 17.

**19.** Section 1927 provides, in full:
　　Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the

§ 1927; *see also McDonald v. McCarthy,* 966 F.2d 112, 116 n. 2 (3d Cir.1992). To impose attorneys' fees under section 1927, the court must make a finding of bad faith. *Hackman v. Valley Fair,* 932 F.2d 239, 242 (3d Cir. 1991) (citing *Ford v. Temple Hosp.,* 790 F.2d 342, 347 (3d Cir.1986)). "Once a finding of bad faith has been made, the appropriateness of sanctions is a matter entrusted to the discretion of the district court." *Hackman,* 932 F.2d at 242.

In *Baker Industries, Inc. v. Cerberus, Ltd.,* 764 F.2d 204 (3d Cir.1985), the Circuit addressed the chilling effect of the imposition of sanctions. It stated: " 'To justify the imposition of excess costs of litigation upon an attorney his conduct must be of an egregious nature, stamped by bad faith that is violative of recognized standards in the conduct of litigation. The section is directed against attorneys who willfully abuse judicial processes.' " *Id.* at 208 (quoting *Colucci v. New York Times Co.,* 533 F.Supp. 1011, 1014 (S.D.N.Y.1982)); *accord Hackman,* 932 F.2d at 242.

█ In *Chambers,* —— U.S. ——, 111 S.Ct. 2123, the Supreme Court held that a district court has inherent power to impose sanctions against parties for bad faith conduct. *Id.* at —— – ——, 111 S.Ct. at 2133–37. The Court explained that while statutory provisions for sanctions and attorneys' fees "reach[ ] only certain individuals or conduct, the inherent power extends to a full range of litigation abuses." *Id.* at ——, 111 S.Ct. at 2134. Indeed, a court may impose sanctions pursuant to its inherent powers even if the conduct could be sanctioned pursuant to oth-

er procedural rules. *Id.* at ——, 111 S.Ct. at 2135.

"A court must, of course, exercise caution in invoking its inherent power, and it must comply with the mandates of due process, both in determining that the requisite bad faith exists and in assessing fees." *Id.* at ——, 111 S.Ct. at 2136. "[A] prerequisite for the exercise of the district court's inherent power to sanction is a finding of bad faith conduct." *Landon v. Hunt,* 938 F.2d 450, 454 (3d Cir.1991).

█ In this case, sanctions are appropriate under section 1927 and *Chambers.* This motion is not close on the merits. Third Circuit law on the unavailability of a jury trial in ERISA Section 502 actions, such as those alleged here, has been unwavering and clear. Although Plaintiffs have taken the position that "the law is evolving" in the area of jury trials in ERISA actions and have relied upon the Supreme Court's decision in *Firestone,* 489 U.S. 101, 109 S.Ct. 948, *see* Opp.Brief at 7–9, 14; *see also* 22 Sept. 1992 Tr. at 25, this position is untenable. Since *Firestone* was decided the Third Circuit—fully cognizant of the *Firestone* decision—has continued to apply the rule of no jury trial under ERISA Section 502 in the aftermath of *Firestone.*[20] *See Sheet Metal Workers,* 934 F.2d at 38; *Cox II,* 894 F.2d at 649–50.

Plaintiffs' argument in support of their demand for a jury trial is baseless and has been made in bad faith. Not only was the law on this issue clear and consistent, but Plaintiffs have not made a good faith argument either that the law has or should be changed.[21] In fact, prior to requiring Prim-

---

proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927.

**20.** In addition, courts in other circuits have addressed and rejected the breach of contract under ERISA common law argument which Plaintiffs employ here. *See supra* at pp. 1308–10. Plaintiffs, in contrast, have not cited *any* cases which have accepted this argument.

**21.** In both their Opposition Brief and on oral argument, Plaintiffs argued that Third Circuit case law is not clear and that the Circuit has

indicated that certain cases brought under ERISA Section 502 may be entitled to a jury trial. Opp.Brief at 18 (citing *Cox I,* 861 F.2d at 394); 22 Feb. 1993 Tr. at 6–7. This argument simply is not credible in the context of this case.

First, while the *Cox I* court recognized that a plaintiff "may still be entitled to a jury trial if his claim for relief under [Section] 502(a)(1)(B) is legal in nature," counsel for Plaintiffs conceded on oral argument that there has not yet been such a case in this Circuit. *See* 22 Feb. 1993 Tr. at 4. This court is not a policy court and is bound to follow—not extend or alter—the established law of this Circuit. Had Plaintiffs' counsel desired to preserve for appeal the question of whether, under *Cox I,* this was to be the first case

erica to bring this motion to strike, counsel for Plaintiffs initially recognized on the record that it appeared a jury trial was not appropriate in this case. 22 Sept. 1992 Tr. at 24–26. Moreover, counsel for Plaintiffs was cautioned on the record, specifically with regard to this issue of a jury trial, that the court did not believe a jury trial was appropriate in this case and that sanctions would be granted for any litigation activity resulting from conduct lacking good faith. 22 Sept. 1992 Tr. at 27. Counsel for plaintiffs have failed to heed these warnings, as well as their own initial observation on the issue. The costs incurred by Primerica in bringing this motion, including attorneys' fees, are awarded to Primerica.[22]

### Conclusion

For the reasons set forth above, Defendants' motion to strike Plaintiffs' demand for a jury trial is granted; this case will proceed as a bench trial. The request of Defendants for the costs, including attorneys' fees, associated with this motion, is also granted. Defendants are directed to submit a detailed statement of costs, expenses, time and fees incurred in connection with the resolution of this issue.

in the Circuit arising under ERISA Section 502 to merit a jury trial, such a reservation could have been accomplished without requiring Primerica to bring a motion to strike. *See infra* n. 22

Second, and more significantly, Plaintiffs' claims in this case are overwhelmingly equitable in nature and do not fit within the class of cases discussed in *Cox I. See supra* at pp. 1307–09. As discussed, it was disingenuous for Plaintiffs to suggest otherwise. Moreover, Plaintiffs have failed to cite *any* authority in this Circuit in which claims such as those presented in this case were given a jury trial. To the contrary, these types of claims—involving the restitution of benefits—have consistently been denied jury trials.

22. Plaintiffs could have reserved the issue for appeal simply by asking the court, on the record, to rule on the request for a jury trial without the need for a motion to strike by Primerica. *See* 22 Feb. 1993 Tr. at 2–4. As well, after review of Primerica's Moving Brief, the baselessness of Plaintiffs' claim to a jury trial should have been obvious. Plaintiffs could then have sought to preserve the issue for appeal rather than requiring further briefing by vigorously opposing the motion.