Judd **ALEXANDER; and Richard Edwards, on behalf of themselves and as representatives of a class of persons similarly situated, Petitioners,**

v.

**PRIMERICA HOLDINGS, INC., formerly known as Primerica Corporation; The Board of Directors of Primerica Holdings, Inc.; James Dimon; Irwin Ettinger; John Fowler; John Doe 1–10 (being individual members of the Primerica Holdings, Inc. Board of Directors); ABC (being the administrator of the American Can Salaried Retirees Group Insurance Plan); and John Doe 15–25 (being the individual members of the board, group or committee functioning as the administrator of the American Can Salaried Retirees Group Insurance Plan), Respondents,**

**Honorable Alfred J. Lechner, Jr., United States District Judge for the District of New Jersey, Nominal Respondent.**

No. 93–5433.

United States Court of Appeals, Third Circuit.

Argued Oct. 28, 1993.

Decided Nov. 29, 1993.

Nicholas deB. Katzenbach (argued), Stuart Peim, Riker, Danzig, Scherer, Hyland & Perretti, Morristown, NJ, for petitioners.

Harvey Kurzweil (argued), Saul P. Morgenstern, Jacob S. Pultman, John J. Blood, Dewey Ballantine, Jonathan R. Morris, Richard M. Green, Primerica Corp., New York City, Donald A. Robinson, Robinson, St. John & Wayne, Newark, NJ, for respondents Primerica Holdings, Inc., James Dimon, Irwin Ettinger and John Fowler.

Before: ROTH, LEWIS, and GARTH, Circuit Judges.

### OPINION OF THE COURT

GARTH, Circuit Judge.

This case has been before us on several occasions. Its appearance before us at this time requires us to review the record of prior proceedings to determine whether the district court judge who has been presiding over this case, through his actions and conduct, has given the appearance of partiality such that all proceedings in this case should henceforth be reassigned to another judge in the District of New Jersey.

Accordingly, the plaintiffs-petitioners, Judd Alexander and Richard Edwards (hereinafter, "petitioners"), on behalf of themselves and as representatives of a plaintiff class now in litigation in United States District Court for the District of New Jersey, seek a writ of mandamus ordering District Court Judge Alfred J. Lechner, Jr. to disqualify himself from hearing their case pursuant to 28 U.S.C. § 455(a).[1] While we do not hold that the petitioners have demon-

strated that Judge Lechner has exhibited bias, we are persuaded that the record to date discloses that Judge Lechner's impartiality could be reasonably questioned such that § 455(a) and our precedents[2] require his disqualification and the reassignment of this case.

Because public confidence in the judicial system mandates, at a minimum, the appearance of neutrality and impartiality in the administration of justice, we will issue a writ of mandamus, in the exercise of our supervision over the district court, *see Haines v. Liggett Group Inc.*, 975 F.2d 81, 97–98 (3d Cir.1992), directing: (1) no further proceedings in this case take place before Judge Lechner; and (2) that the Chief Judge order the Clerk of the District Court of the District of New Jersey to reassign this case to another district court judge.

### I.

This case has been assigned to Judge Lechner since its inception as a class action in December 1989. By consent order filed May 13, 1991, the class was certified to include approximately 2500 retired salaried employees of American Can Company. The petitioners are seeking a declaratory action and enforcement of certain claimed rights to various welfare benefits which they receive from the American Can Salaried Retirees Group Insurance Plan.

The central issue in the case before Judge Lechner is whether American Can promised employees and retirees that their welfare benefits were irrevocable upon retirement and that retiree contribution amounts could not be unilaterally changed. The petitioners allege that Primerica Holdings, Inc., a successor in interest to American Can, the Board of Directors of Primerica, individual members of the board and the administrator of the Plan breached their contractual obligations and violated the provisions of the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, by

---

**1.** 28 U.S.C. § 455(a) provides that: "Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."

**2.** *See In re School Asbestos Litigation*, 977 F.2d 764, 781–85 (3d Cir.1992); *Haines v. Liggett Group Inc.*, 975 F.2d 81, 98 (3d Cir.1992).

unilaterally modifying the Plan. Specifically, the petitioners contend that American Can Company made oral and written representations to them that lifetime life and medical insurance benefits would be provided upon retirement, and that medical insurance benefits would be irrevocable upon retirement and would be provided at nominal cost to retirees.

In support of their claims, the petitioners relied on Summary Plan Descriptions in ERISA booklets distributed by American Can to its employees and retirees. These Summary Plan Descriptions included the following clause:

> The Company expects to continue this Plan indefinitely, but necessarily reserves the right to amend, modify, or discontinue the Plan in the future in conformity with applicable legislation.[3]

The petitioners interpreted this clause to mean that American Can would only modify the Plan if it became necessary to conform the Plan with applicable legislation. Primerica argued that this clause gave American Can the right to amend or modify the Plan unilaterally. Neither side produced a formal Plan document to support its position.

On July 25, 1991, Judge Lechner granted summary judgment in favor of Primerica. Judge Lechner determined that the disputed summary plan description clause unambiguously reserved the company's right to reduce employee welfare benefits, and that the retirees' construction of this same clause as a promise of irreducible benefits was "unreasonable." *Alexander v. Primerica Holdings, Inc.*, No. 89–5151 (D.N.J. July 25, 1991).

On appeal, we reversed. *Alexander v. Primerica Holdings, Inc.*, 967 F.2d 90 (3d Cir.1992). We held that the Summary Plan

Descriptions were, in fact, ambiguous, and stated

> [b]ecause a plan document does not exist and because the summary plan descriptions are ambiguous, the district court, as the trier of fact, must determine whether the Plan provided lifetime benefits upon retirement. *See Taylor v. Continental Group*, 933 F.2d 1227, 1232 (3d Cir.1991) (interpretation of ambiguity is question of fact). In interpreting an ambiguous ERISA plan, a court may consider the intent of the plan's sponsor, the reasonable understanding of the beneficiaries, and past practice, among other things.

*Id.* at 96.

## II.

The petitioners claim that Judge Lechner has prejudged their case because of "his pique at having been reversed" by this court, and because of his alleged animus towards their counsel, Gerald Liloia of Riker, Danzig, Scherer, Hyland & Perretti ("Riker, Danzig"). The record reveals the following events culminating with the filing of this petition for writ of mandamus:

After remand, Judge Lechner set a scheduling, status and settlement conference for September 22, 1992. In anticipation of that meeting, Primerica's counsel, Harvey Kurzweil of the Dewey Ballantine law firm, supplied petitioners' counsel with two documents designated Forms A and B (S.A. 160 and 161) which had been unearthed during Primerica's document search. The forms—purportedly signed by class members and allegedly acknowledging the company's right to increase the medical insurance contributions made by the retirees—were submitted to the district court at the September 22, 1992 conference. When questioned about the forms by Judge Lechner, petitioners' counsel Liloia

---

**3.** This clause was included in a section of one of the Summary Plan Descriptions, which stated in part:

> Extent and Limit of Coverage
> The Company expects to continue this Plan indefinitely, but necessarily reserves the right to amend, modify, or discontinue the Plan in the future in conformity with applicable legislation. The Plan does not provide for benefit payments in any case or under any condition not identified and provided for in this booklet.

> The Group Insurance Policy and the certificates thereunder issued by the Insurance Company are consistent with the terms and conditions outlined in this booklet.
> If any changes become effective under the Medicare Program by reason of current or future Governmental legislation or regulations, then full consideration will be given to appropriate modification in this Retired Group Insurance Plan.

apparently claimed that he did not understand what the forms meant. The district court judge then insisted that the proceedings be put on the record, and explained that:

Mr. Liloia wants to make a motion for my recusal. He can do so in a moment.

First, the reason we're on the record, we started to have a conference in a case entitled *Alexander v. Primerica.* I issued a summary judgment opinion, which was reversed by the circuit and we are now here discussing what will happen in the future procedures [sic] in this.

A document [Forms A and B] has been presented by Primerica which has some pretty significant language.

\* \* \* \* \* \*

Now, we were discussing that and I asked Mr. Liloia what his reaction was to that and he said he didn't know what it meant. I read that first sentence to him, the sentence indicating that the signatory of that document understands the charge for the coverage could be changed.

He said he did not understand it.

I indicated to Mr. Liloia that I would appreciate candor from him and that in the past I've had difficulty with him.

At that point, Mr. Liloia became very exercised and said he resented it. I, frankly, don't care what you resent, Mr. Liloia.

\* \* \* The reason I said that before is because I've had experience with you where I relied on things you've told me on the record and you later recanted them. I published an opinion on that and it went to the Circuit where I was affirmed.

That, to your benefit, is *Mutual Benefit v. Zimmerman,* 787 Fed.Supp. 71, a 1992 case.

When attorney Liloia repeated for the record that he was considering asking the judge to recuse himself for bias against petitioners, Judge Lechner responded:

The correct term is whether I have a prejudice against you, I would have a prejudice against you. But the fact of the matter is I stand by that *Mutual* opinion where you lost in the Circuit. I relied on

words you told me and you tried to recant those words at a subsequent motion.

\* \* \* \* \* \*

I have no bias in favor of the other side or prejudice against your clients. As far as you're concerned personally, I don't know, I don't think I've ever spoken with you socially. My only intercourse with you have [sic] been in open court on the record and on that one occasion where I cited, I could not rely on it. That is what I'm referring to.

In a subsequent proceeding, petitioners sought a preliminary injunction to enjoin Primerica from again modifying the retirement plan by forcing petitioners to pay 100% of the costs for medical benefits and from eliminating life insurance benefits, effective December 31, 1992. The record indicates that the preliminary injunction motion, supported by voluminous documents, was filed by petitioners at the eleventh hour. Judge Lechner denied the motion for an accelerated return date. In response, petitioners filed their first writ of mandamus, along with an appeal and an emergency motion, seeking an expedited hearing before December 31, 1992. On December 16, 1992, we dismissed the appeal on jurisdictional grounds, and denied the mandamus petition without comment.

On January 7, 1993, Judge Lechner issued an opinion requiring petitioners to post a bond in the amount of $7,733,514 if successful on their preliminary injunction motion. *Alexander v. Primerica Holdings, Inc.,* 811 F.Supp. 1025, 1027 (D.N.J.1993). In stating the procedural history of the case, Judge Lechner referred in the opinion to Forms A and B:

[I]t appears that most employees of American Can signed one of two forms upon registering for coverage under the Plan which indicate that the contribution amount for retirees was understood to be subject to change.

*Id.* at 1028.

Judge Lechner went on to explain that, in reversing the July 25, 1991 summary judgment order in favor of Primerica, we had instructed " 'that the retirees' affidavits and documents, if believed by the district court,

are sufficient to show that the Plan promised lifetime irreducible benefits.'" *Id.* at 1030 (quoting 967 F.2d at 96). In an accompanying footnote, Judge Lechner noted:

> The opinion of the Circuit and this comment in particular were drafted without the benefit of review of Forms A and B.

*Id.* n. 10. In another footnote, Judge Lechner for the first time noted the existence of what he characterized as "Plan documents":[4]

> Significantly, since the decision on the cross-motions for summary judgment and the decision on appeal were rendered, continued discovery revealed the existence of Plan documents, as well as Forms A and B signed by individual members of the Plaintiff class upon registering for benefits through Primerica.

*Id.* n. 9.

In support of their motion for a preliminary injunction, the petitioners had submitted the affidavit of William F. May, the retired chairman of American Can and a member of the plaintiff class. In the affidavit, May averred that: "At no time did American Can reserve the right to reduce or terminate any of the benefits which were promised to retirees for life." At May's deposition in January 1993, Primerica confronted the retired executive with two affidavits made during earlier related litigation in which May swore that the company "always reserved the legal right to terminate any of the benefits of the retirement program at its sole discretion." Counsel for Primerica promptly brought the contradictory affidavits to the attention of Judge Lechner.

At the next conference, on January 19, 1993, Judge Lechner asked petitioners' attorney Liloia why Liloia had not himself brought the conflicting May affidavits to the attention of the court. When Liloia asked why he should have brought them to the court's attention, Judge Lechner responded: "Because it appears to be perjury." Judge Lechner indicated that he was considering referring the matter to a grand jury, and told attorney Liloia that, "I think you better advise Mr. May he may need counsel."

Apparently unable to post bond in the required amount of $7,733,513, the petitioners withdrew their preliminary injunction motion and requested a full trial on the merits. Accordingly, the district court judge scheduled trial for May 1993. Despite Primerica's motion to strike the petitioners' demand for a jury trial and the district court judge's indication that the case did not appear to be a proper one for a jury trial, petitioners subsequently refused to withdraw their demand for a jury.

In an opinion dated February 25, 1993, Judge Lechner held that the petitioners were not entitled to a jury trial on their ERISA claims, and that their argument in support of their demand for a jury trial was "baseless" and "made in bad faith."[5] *Alexander v. Primerica Holdings, Inc.,* 819 F.Supp. 1296, 1311 (D.N.J.1993). Finding that petitioners had not made a good faith argument either that the law has or should be changed, the district court judge imposed sanctions against the petitioners for their counsel's "conduct lacking good faith." *Id.* at 1312.

In the same February 25, 1993 opinion, Judge Lechner again noted the significance of Primerica's discovery of "Plan documents, as well as Forms A and B signed by individual members of the Plaintiff class," *id.* at 1303 n. 9, calling attention once more to the fact that these documents had not been before this court when we reversed summary judgment entered in favor of Primerica. Judge

---

**4.** Petitioners vigorously dispute that any formal "Plan documents" exist. They claim that the only submission to the district court judge concerning this issue was an October 8, 1992 letter from Primerica's counsel advising Judge Lechner that "plan documents" supporting Primerica's position had been unearthed in discovery. Primerica contends that it also discussed the existence of "the Plan document" in its December 15, 1992 brief to the district court, and that petitioners never contested the existence and production of "the Plan document" before the district court.

**5.** Petitioners' counsel argued that the law is evolving in this area and that courts in other jurisdictions had held that recent United States Supreme Court cases changed existing Third Circuit case law regarding entitlement to jury trials in ERISA actions. Judge Lechner in the instant case rejected this position as untenable. 819 F.Supp. at 1311.

Lechner went on to note further that this court's opinion reversing the summary judgment order was drafted also "without the benefit of review of ... the two contradictory affidavits by William May," and· without knowledge that May had "presented directly contradictory testimony regarding the intent issue." *Id.* at 1303 n. 10 and n. 9.

Following disclosure of May's apparently conflicting affidavits, a Primerica witness, Robert Bogart, also repudiated statements made in an affidavit during earlier related litigation that had supported Primerica's position. Consequently, Bogart, a retired American Can executive, was listed as a witness for petitioners.

Petitioners' motion to disqualify Primerica's counsel, Dewey Ballantine, because of the firm's prior representation of May and American Can resulted in another opinion by Judge Lechner on May 6, 1993. *Alexander v. Primerica Holdings, Inc.,* 822 F.Supp. 1099 (D.N.J.1993). In denying petitioners' request for disqualification of Dewey Ballantine, Judge Lechner once again referred to our earlier statement that the retirees' affidavits and documents, "if believed by the district court," would be sufficient to prove that the Plan promised lifetime irreducible benefits. In making this observation, Judge Lechner wrote:

> The opinion of the circuit and this comment in particular were drafted without the benefit of review of Forms A and B, of the two contradictory affidavits by William May and of the two additional contradictory affidavits of Robert Bogart ("Bogart"). *See infra* at p. 1113.

*Id.* at 1104.

In the closing paragraph of that opinion, Judge Lechner found that the disqualification motion brought by petitioners "appears to have been filed for the purpose of gaining for Plaintiffs an undeserved tactical advantage over Primerica." *Id.* at 1120. The judge expanded on the conduct of petitioners and their counsel in an accompanying footnote:

This conclusion is consistent with the prior conduct of Plaintiffs and their counsel throughout this litigation—conduct which has been characterized by excessive contentiousness and, at times, bad faith. For instance, as discussed, Plaintiffs filed a mammoth Preliminary Injunction Motion and insisted the court review the merits of that motion on extremely short notice....

Similarly, despite clear indications from the court and significant Circuit authority to the contrary, Plaintiffs insisted on maintaining their right to a jury trial.... In fact, this position was so baseless that sanctions were imposed.

Finally, also as mentioned, Plaintiffs have apparently refused to go forward with discovery of this case.... This motion to disqualify Dewey Ballantine, made after three years of delay and after significant reliance by Primerica has occurred, appears to be simply another link in what appears to be an abusive chain of events....

*Id.* at 1120 n. 40.

Based on this record, the petitioners sought to have Judge Lechner disqualify himself pursuant to 28 U.S.C. § 455(a), claiming that, at the least, Judge Lechner had displayed the appearance of partiality. They charged that, among other things, Judge Lechner had given undue weight to Forms A & B, when at that stage of the proceedings only a few of the class of retirees may have signed the particular forms. Moreover, the petitioners emphasized that the prejudgment of this issue by Judge Lechner could be deemed virtually conclusive with respect to the disposition of the case because Judge Lechner would be the sole trier of fact.

In his June 3, 1993 letter to counsel for petitioners and Primerica, Judge Lechner responded to the petitioners' recusal motion. In that letter opinion Judge Lechner dealt with all of the charges made by petitioners, claiming that he had not prejudged the issues in the case [6]; that he had not exhibited

---

6. Judge Lechner explained:

My comments have not discussed Forms A and B in a substantive context and have never suggested that Forms A and B alone are dis- positive of the issues in this litigation. Moreover, Forms A and B have not been described as 'significant' and have not been commented upon except as part of the cumulative discov-

an appearance of bias; that the petitioners had distorted his statements; that he bore no animosity toward petitioners's counsel [7]; and that he had not prejudged the veracity of two of the petitioners' prospective witnesses (May and Bogart). The motion to recuse was thereupon denied.

After Judge Lechner refused to recuse himself, petitioners filed this petition for writ of mandamus. In response to petitioners' filings with this court, Judge Lechner wrote to petitioners' counsel, Stuart Peim of Riker, Danzig, on August 12, 1993. In that seven-page letter, Judge Lechner challenged ten statements made by petitioners in their mandamus brief as being either "incomplete or inaccurate summaries of my comments or opinions...." He concluded the letter by noting that "[t]hese comments do not address all of the problematic areas in the Mandamus Brief." Although the judge sent a copy of his letter to Primerica's counsel, the letter was not submitted by him to this court. After counsel for petitioners filed the judge's letter in support of their petition for writ of mandamus, on September 23, 1993 we directed petitioners and Primerica to file memoranda commenting on the August 12, 1993 letter.

### III.

Whenever a judge's impartiality "might reasonably be questioned" in a proceeding, 28 U.S.C. § 455(a) commands the judge to disqualify himself *sua sponte* in that proceeding. For purposes of § 455(a) disqualification, it does not matter whether the district court judge actually harbors any bias against a party or the party's counsel. This is so because § 455(a) concerns not only fairness to individual litigants, but, equally important, it concerns "the public's confidence in the judiciary, which may be irreparably

harmed if a case is allowed to proceed before a judge who appears to be tainted." *In re School Asbestos Litigation,* 977 F.2d 764, 776 (3d Cir.1992) (citing *Liljeberg v. Health Servs. Acquisition Corp.,* 486 U.S. 847, 859–60, 108 S.Ct. 2194, 2202–03, 100 L.Ed.2d 855 (1988); H.R.Rep. No. 93–1453, 93d Cong., 2d Sess. 5 (1974), *reprinted in* 1974 U.S.C.C.A.N. 6351, 6355 [hereinafter "House Report"]). To achieve its highest function, "'justice must satisfy the appearance of justice.'" *School Asbestos Litigation,* 977 F.2d at 782 (quoting *In re Murchison,* 349 U.S. 133, 136, 75 S.Ct. 623, 625, 99 L.Ed. 942 (1955)).

The instruction to which we adhere "is designed to promote public confidence in the impartiality of the judicial process by saying, in effect, if there is a reasonable factual basis for doubting the judge's impartiality, he should disqualify himself and let another judge preside over the case." House Report, *reprinted in* 1974 U.S.C.C.A.N. at 6351, 6355. At the same time,

> in assessing ... [the judge's] impartiality, [the] judge [and, of course, we as a reviewing court] must be alert to avoid the possibility that those who would question [the judge's] impartiality are in fact seeking to avoid the consequences of his expected adverse decision. Disqualification for lack of impartiality must have a *reasonable* basis.... Litigants ought not have to face a judge where there is a reasonable question of impartiality, but they are not entitled to judges of their own choice.

*Id.* As we are all too aware, the issue of disqualification "is a sensitive question of assessing all the facts and circumstances in order to determine whether the failure to disqualify was an abuse of sound judicial discretion." *Id.*

---

ery that has taken place in this litigation since the Third Circuit's remand. Contrary to the Plaintiffs' assertions, my decisions have not stated that, had the Circuit had the benefit of Forms A and B, the decision granting summary judgment in favor of defendants, *see* 25 July 1991 Decision, would have been affirmed.

\* \* \* \* \* \*

\* \* \* Forms A and B may be 'significant' not because they are dispositive of the merits of this

litigation, but because they may indicate that class certification is not appropriate in this case.

\* \* \*

7. Judge Lechner stated that his discussion of "the incident with Mr. Liloia in another matter, the *Mutual Benefit* case—in addition to being accurate—was intended to illustrate the purpose and necessity of maintaining a written record at all times in this case."

Mandamus is a proper means for this court to review a district court judge's refusal to recuse from a case pursuant to 28 U.S.C. § 455(a), where the judge's impartiality might reasonably be questioned. *School Asbestos Litigation*, 977 F.2d at 777–78. Virtually every court of appeals has recognized the necessity and propriety of interlocutory review of disqualification issues on petitions for mandamus "to ensure that judges do not adjudicate cases that they have no statutory power to hear." *Id.* at 778 (listing cases). "While review after final judgment can (at a cost) cure the harm to a litigant, it cannot cure the additional, separable harm to public confidence that section 455 is designed to prevent." *Id.* at 776. While the particular subject matter of the litigation may not govern the right to mandamus review, we note that waiting until final appeal is a particularly inadequate remedy in this case where the subject of the litigation is the availability of medical benefits and life insurance proceeds for the petitioners, who are aged retirees and their spouses.[8]

Although we have the power to issue extraordinary writs under the All Writs Act, 28 U.S.C. § 1651(a), we nevertheless are chary in exercising that power. *Id.* at 772; *Westinghouse Elec. Corp. v. Republic of Philippines*, 951 F.2d 1414, 1422 (3d Cir. 1991). Even when the petitioner shows that there is no other adequate means to obtain the desired relief, *Kerr v. United States Dist. Court*, 426 U.S. 394, 403, 96 S.Ct. 2119, 2124, 48 L.Ed.2d 725 (1976), and also has shown a "clear and indisputable" right to issuance of the writ, *Will v. United States*, 389 U.S. 90, 96, 88 S.Ct. 269, 274, 19 L.Ed.2d 305 (1967), the exercise of our power is largely discretionary. *Kerr,* 426 U.S. at 403, 96 S.Ct. at 2124; *School Asbestos Litigation,* 977 F.2d at 772.[9]

## IV.

Our independent review of the record in this case impels our conclusion that the outcome of this case "would be shrouded [in] suspicion" if Judge Lechner were to continue to preside as trier of the fact. *See School Asbestos Litigation,* 977 F.2d at 785. This is not to say that the record discloses actual bias on Judge Lechner's part. Quite to the contrary, we have made, and make, no such determination. What we do decide, however, is that the record suffices to establish that Judge Lechner's impartiality may reasonably be questioned.

We cannot overlook the fact that this is a non-jury case, and that Judge Lechner will be deciding each and every substantive issue at trial. If it turns out that Primerica prevails, as it could, we would be hard pressed, in light of the record developed to date, to defuse, quiet or overcome the suspicions of the petitioners, as well as those of the public itself, that Judge Lechner's final disposition may not have been based exclusively upon the evidence presented at trial.

Although we have recited the history of these proceedings at some length so that there may be an understanding of the decision which we reach, that recital and the observations which we make in the course of this opinion are not to be taken as expres-

---

8. It has not escaped our notice that petitioners in this case had not moved for permission to file an interlocutory appeal pursuant to 28 U.S.C. § 1292(b). This failure, however, does not preclude our consideration of their mandamus petition because we have yet to require, as a precondition for filing a mandamus petition conditioned upon a § 455(a) disqualification, that a prior § 1292(b) certification be sought. *See School Asbestos Litigation,* 977 F.2d at 774; *see also Prudential Ins. Co. of Am. v. U.S. Gypsum Co.,* 991 F.2d 1080, 1083 (3d Cir.1993) (section 1292(b) certification denied prior to filing of mandamus petition).

9. In *School Asbestos Litigation,* we stated that ordinarily we review a district judge's refusal to recuse himself pursuant to 28 U.S.C. § 455 for abuse of discretion. 977 F.2d at 778 n. 15; *see Jones v. Pittsburgh Nat'l Corp.,* 899 F.2d 1350, 1356 (3d Cir.1990). When the need for a writ of mandamus is determined by this court to be "clear and indisputable," a district judge's decision not to recuse himself or herself necessarily also will have been an abuse of discretion or a clear legal error. *School Asbestos Litigation,* 977 F.2d at 778 n. 15. While our holding in this case under our supervisory power invokes only the statutory principles of § 455(a) and does not constitute an interpretation of the statute itself, *see infra* part V, we nevertheless hold that because Judge Lechner's impartiality could reasonably be questioned, his refusal to disqualify himself was an improper exercise of his discretion.

sions or inclinations of this court respecting the merits of the rulings which Judge Lechner has made. The issues presented by those rulings are not before us, and we intimate no views whatsoever concerning the merits of the decisions which Judge Lechner has reached.

As a result, we need not decide the merits of the charges raised by petitioners, or the merits of Primerica's countercharges found in its opposing brief. Nor will we decide the merits of the issues discussed in Judge Lechner's August 12, 1993 letter to counsel responding to the petition for writ of mandamus. By the same token, we have no need to address the issue of whether petitioners and their counsel have abused the judicial process by acting in bad faith, as that issue is similarly irrelevant to the § 455(a) issue with which we have been confronted. Protecting important institutional values against the appearance of partiality does not require us to affix blame. Rather, the appropriate—and the only—inquiry to which we must respond is "whether a reasonable person, knowing all the acknowledged circumstances, might question the district court judge's continued impartiality." *School Asbestos Litigation*, 977 F.2d at 781.

### A.

Here, the observations made by Judge Lechner throughout the conduct of these proceedings could well give rise to the questioning of his impartiality. Since reversal of his summary judgment order by this court—and despite his protestations to the contrary (*see* June 13, 1993 letter denying recusal)—Judge Lechner has apparently not receded from his view that the Summary Plan Descriptions, however they may be augmented to date, are unambiguous. Judge Lechner in each of his reported decisions has given strong indications that Primerica may have a right to eliminate or raise the cost of medical insurance benefits of its retired salaried employees, and that "the contribution amount

for retirees was understood [by the petitioners] to be subject to change." 811 F.Supp. at 1028 and n. 7; 819 F.Supp. at 1301 and n. 7; 822 F.Supp. at 1102 and n. 7.

In addition, Judge Lechner's observations that petitioners' witnesses may have committed perjury could be perceived by a reasonable person as an indication that the district court judge—without having heard all of the testimony—has already determined that important witnesses for the petitioners are not credible.[10]

Petitioners also argue that Judge Lechner has charged them—the retirees—with acting in bad faith, although there is no evidence of record which supports this charge. Specifically, the district court judge has accused petitioners of acting in bad faith, of refusing or "apparently" refusing to go forward with discovery, and of abusing the judicial process. *See, e.g.*, 822 F.Supp. at 1120 n. 40. It may well be that Judge Lechner had not intended to include the retiree clients in his "bad faith" condemnation, even though his opinion did not differentiate between conduct of the retirees and their counsel. Nevertheless, by focusing his charge on the "conduct of Plaintiffs and their counsel throughout this litigation—conduct which has been characterized by excessive contentiousness and, at times, bad faith," *id.*, Judge Lechner has tarred the retirees as "bad faith" participants and has thus drawn them into the recusal controversy to the same extent as their counsel—and this despite an absence of record evidence.

 On his part, Judge Lechner has repeatedly denied bias in favor of Primerica, prejudice against the petitioners, or that he has prejudged this case. He has made these points quite forcefully, both on the public record and in his letter opinion denying petitioners' recusal motion. Indeed, Judge Lechner in his response has personally refuted petitioners' "incomplete or inaccurate summaries" of his comments and opinions.

---

10. In this court's opinion reversing Judge Lechner's summary judgment in favor of Primerica, Judge Mansmann, writing for the court, referred to witness May's testimony at a time prior to the surfacing of an apparent contradictory affidavit. *Alexander v. Primerica Holdings, Inc.*, 967 F.2d at

96. However, May's testimony was evidently of the same character and to the same effect as the testimony given by Judd H. Alexander, Sal J. Guidice, Lawrence Morrow, and Eugene Ecker—witnesses who will evidently be called by petitioners to testify to lifetime benefits. *See id.*

Thus, we find it difficult to resist the suggestion that Judge Lechner, in responding to the mandamus petition by letter to petitioners' counsel, has exhibited a personal interest in the outcome of this litigation. Primerica argues, however, that the judge's "correction letter" is a less adversarial approach than the filing of a formal memorandum in support or explanation of his challenged action. We cannot agree.

In *Rapp v. Van Dusen,* 350 F.2d 806, 812–13 (3d Cir.1965) (en banc), we undertook to furnish instruction to district court judges concerning the propriety of actions taken by a judge named as a nominal party answering the petition. We held that the prevailing party in the challenged decision should be permitted to answer the petition, and we said:

It is they who should have the opportunity and the responsibility to vindicate the decision in their favor. The judge, although served with a copy of the petition, shall not be required to file an answer and his failure to controvert any of the allegations of fact in the petition shall not be deemed an admission of their truth. It is appropriate that his original opinion be considered as his answer to the contentions of the petition and if no opinion already appears of record, or if he decides to supplement his opinion, he may file in the mandamus proceeding in this court a memorandum in support and explanation of his challenged action.

This procedure will make it unnecessary for us to issue any preliminary orders to the judge on the filing of a petition for mandamus. It will keep him from becoming entangled as an active party to litigation in which his role is judicial and in which he has no personal interest. It will make it unnecessary for a judge to retain counsel and thus will avoid burdening him with the undesirable alternatives of acting as his own counsel, or seeking outside counsel to serve him with or without charge, or obtaining the services of counsel for the successful parties who continue to serve their clients by acting as his nominal counsel. A judge will thus be guarded from engaging in ex parte discussions with counsel or aligning himself even temporarily with one side in pending litigation.

*Id.* at 813.

The guidelines which we established in *Rapp* are as relevant and compelling today as they were then. They are intended to prevent a district court judge from assuming, or being perceived to assume, an adversarial position. And while *Rapp* permits the district court judge to file a memorandum with us explaining his actions, the entire thrust of our direction was to discourage participation in the mandamus proceeding by the judge, leaving it to counsel in the case to answer the petition, to contradict allegations and to vindicate the judge's decision.[11]

In the present case where Judge Lechner has authored six opinions [12], and where counsel for Primerica has responded eloquently and vigorously to the allegations of the petition, we are fearful that Judge Lechner's letter response to the petition could be misinterpreted by a reasonable person, to say nothing of a disappointed litigant, as an attempt by Judge Lechner to align himself with Primerica.

11. The proposed amendment to Rule 21 of the Federal Rules of Appellate Procedure, which was circulated in October 1993 and on which public hearings will be held during the year 1994, is consistent with our discussion here and with the teaching of *Rapp v. Van Dusen,* 350 F.2d 806, 812–13 (3d Cir.1965) (en banc). The proposed Rule provides, among other things, that the district court judge may file and serve a response to a petition for writ of mandamus, if the judge chooses to do so. The thrust of the proposed Rule, however, is to the same effect as our discussion here. The amendment is essentially designed to change the tone of Rule 21 and of mandamus proceedings generally so that the district court judge is not treated as a respondent. It would not only remove the judge's name from the caption of the petition, but it would leave to the parties, rather than to the judge, the presentation of the issues and the arguments.

12. *See Alexander v. Primerica Holdings, Inc.,* No. 89–5151 (D.N.J. July 25, 1991); 811 F.Supp. 1025 (D.N.J.1993); 819 F.Supp. 1296 (D.N.J. 1993); 822 F.Supp. 1099 (D.N.J.1993); June 3, 1993 letter opinion denying petitioners' disquali-

■ We are not unaware of the problems confronting district court judges who are charged with bias or the appearance of bias. Or, indeed the problems which confront judges in other contexts where they are criticized in the press, or elsewhere, for their actions and for rendering what, to some, may appear to be unpopular decisions. Nonetheless, an inherent aspect of a judge's position when the oath of judicial office is taken, is that the judge will be seen and heard only through his or her opinions. To the extent that this limitation may be deemed to relegate a judge to the status of second-class citizen (insofar as expression in other fora is concerned), it is a self-imposed restriction that necessarily comes with the office.

■ It is true, of course, that Judge Lechner did not file his response with the court as an answer to the petition, nor did he consult with counsel for Primerica as was apparently the case in *Rapp*. However, a judge's participation in a case must never reach the point where it appears, or is even perceived to appear, that the judge is aligned with any party in the pending litigation. See *Rapp*, 350 F.2d at 813. Judge Lechner's letter resulted in the same evils and consequences which we sought to prevent by our teachings in *Rapp* and, unfortunately, has triggered once again the sensitive question of impartiality.

■ Underscoring all of the matters to which we have referred is our recognition that Judge Lechner, by virtue of his earlier ruling which held that the petitioners are not entitled to a jury [13]—a ruling upon which we express no opinion whatsoever—will be disposing of each essential issue in this case by his decisions alone at a bench trial. When the judge is the actual trier of fact, the need to preserve the appearance of impartiality is especially pronounced.

## B.

It is obviously difficult to filter a judge's responses to counsel and a judge's conduct of a case through the prism of partiality when the proceedings over which he has presided have been in progress for more than four years and have been strenuously contested every step of the way by each of the parties. It is even more difficult to do so when the standards which we must apply, although couched in objective form, necessarily partake of a degree of subjectivity.

Moreover, we are keenly aware of the impact that our decision here might have on the conduct of all disputed matters and cases that district court judges try. That particular argument has weighed heavily upon us in resolving the very delicate issue of whether Judge Lechner's impartiality might reasonably be questioned. Despite these considerations, we are of the definite impression that the flavor imported to the record by the combination of the factors we have discussed in this opinion requires reassignment of this case to another judge.

## V.

Having determined that Judge Lechner's "impartiality might reasonably be questioned," *see* 28 U.S.C. § 455(a), we turn our inquiry to Primerica's argument that a writ of mandamus cannot issue in this case because petitioners have failed to demonstrate any extrajudicial bias as required by § 455(a). But, we have never explicitly required a showing of extrajudicial bias or prejudice as a prerequisite for disqualification under § 455(a). Our *dictum* in *Johnson v. Trueblood* merely suggested that the type of bias required for recusal under § 455(a) might be the same as must be shown under 28 U.S.C. § 144, which requires the source of a district court judge's *actual* bias or prejudice to be extrajudicial. 629 F.2d 287, 290–91 (3d Cir.1980), *cert. denied,* 450 U.S. 999, 101 S.Ct. 1704, 68 L.Ed.2d 200 (1981).

In *School Asbestos Litigation,* we drew a distinction between the two recusal statutes, noting that the "broader command" of § 455(a) "concerns a wider range of interests" than § 144. 977 F.2d at 774–76. Although we discussed at length the extrajudicial influences creating an appearance of partiality on the part of the district court judge in *School Asbestos Litigation,* nowhere in that opinion did we explicitly state that the

---

fication motion; August 12, 1993 letter to counsel responding to the petition .for mandamus.

**13.** *Alexander v. Primerica Holdings, Inc.,* 819 F.Supp. at 1307.

source of apparent partiality *must* be extra-judicial in nature.

Although we could decide this matter only with regard to § 455(a), we nonetheless decline to do so. While the principles of § 455(a) inform us as to the need for an appearance of impartiality, our decision and the remedy which we prescribe when a judge's impartiality may appear to be questioned is governed by our precedents. *Haines v. Liggett Group Inc.*, 975 F.2d at 97–98; *Lewis v. Curtis*, 671 F.2d 779, 789 (3d Cir.), *cert. denied*, 459 U.S. 880, 103 S.Ct. 176, 74 L.Ed.2d 144 (1982). We are mindful that the question of whether the cause of apparent partiality under § 455(a) must stem from an extrajudicial source is now before the Supreme Court in *United States v. Liteky*, 973 F.2d 910 (11th Cir.1992), *cert. granted*, —— U.S. ——, 113 S.Ct. 2412, 124 L.Ed.2d 636 (1993). The Court has granted certiorari in *Liteky* to resolve a recognized split among the circuits on this issue. *See Waller v. United States*, —— U.S. ——, 112 S.Ct. 2321, 119 L.Ed.2d 239 (1992) (White, J., dissenting from denial of petition for writ of certiorari to decide question in earlier case) (listing cases).

■ We need not wait for the Supreme Court's decision in *Liteky*, however, to resolve this case. We agree with petitioners that, irrespective of the requirements of § 455(a), we have supervisory authority to order this case reassigned to another district court judge.[14] *See Haines v. Liggett Group Inc.*, 975 F.2d 81, 98 (3rd Cir.1992) (exercising court's supervisory power in reassigning case on remand to another district court

judge); *Lewis v. Curtis*, 671 F.2d at 789 (same).

■ In *Haines*, we stressed that " 'impartiality and the appearance of impartiality in a judicial officer are the sine quo non of the American legal system' " 975 F.2d at 98 (quoting *Lewis v. Curtis*, 671 F.2d at 789). Because "justice must satisfy the appearance of justice," *Offutt v. United States*, 348 U.S. 11, 14, 75 S.Ct. 11, 99 L.Ed. 11 (1954), it is our responsibility to exercise our supervisory authority, as reluctant as we always are to do so when it requires the reassignment of a case from as excellent and dedicated a jurist as Judge Lechner. We are satisfied that Judge Lechner has shown no actual bias or prejudice in this case; but that is not the test by which we must measure the issue before us. We must " 'preserve not only the reality but also the appearance of the proper functioning of the judiciary as a neutral, impartial administrator of justice.' " *Haines v. Liggett Group Inc.*, 975 F.2d at 98 (quoting *United States v. Torkington*, 874 F.2d 1441, 1447 (11th Cir.1989)). Here we have been compelled to conclude that the appearance of impartiality can be served in this case only be exercising our supervisory power to reassign the proceeding to another district court judge.

## V.

We are authorized to order the reassignment of this case to another district court judge pursuant either to the All Writs Act, 28 U.S.C. § 1651(a), or 28 U.S.C. § 2106.[15] *United States v. Torkington*, 874 F.2d at 1446 ("[t]hese statutes, as well as the court's

---

14. For this reason, we need not decide whether Judge Lechner's remarks at the September 22, 1992 conference in this case concerning his "difficulty" in a prior case with petitioners' counsel, Gerald Liloia, and Liloia's alleged lack of candor, are "extrajudicial," as petitioners allege. In this regard, we merely note the current view of this circuit that " '[e]xtrajudicial bias' refers to a bias that is not derived from the evidence or conduct of the parties that the judge observes in the course of the proceedings." *Johnson v. Trueblood*, 629 F.2d at 291 (citing *United States v. Grinnell Corp.*, 384 U.S. 563, 86 S.Ct. 1698, 16 L.Ed.2d 778 (1966)).

15. The All Writs Act provides in pertinent part:

The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.
28 U.S.C. § 1651. Section 2106 provides:
The Supreme Court or any other court of appellate jurisdiction may affirm, modify, vacate, set aside or reverse any judgment, decree, or order of a court lawfully brought before it for review, and may remand the cause and direct the entry of such appropriate judgment, decree, or order, or require such further proceedings to be had as may be just under the circumstances.
28 U.S.C. § 2106.

inherent authority, allow it to direct that a case on remand be assigned to a different judge"). We will therefore issue a writ of mandamus: (1) ordering that no further proceedings in this case take place before Judge Lechner; and (2) directing that the Chief Judge order the Clerk of the District Court for the District of New Jersey to reassign this case to another judge in the District of New Jersey. Because of the nature of this proceeding, the mandate will issue forthwith.

Each party will bear its own costs.