**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-3033
_____

In re:  MADELINE APOLLO,

Petitioner

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(No. 2-11-cv-06684)
District Judge:  Honorable Petrese B. Tucker

Argued:  January 16, 2013

Before: SMITH, CHAGARES, and SCIRICA, <u>Circuit Judges</u>.

(Filed: August 14, 2013)
_____

OPINION
_____

Frederick P. Santarelli, Esq. (ARGUED)
Timothy T. Myers, Esq.
Elliott Greenleaf & Siedzikowski
925 Harvest Drive
Suite 300, Union Meeting Corporate Center V
Blue Bell, PA 19422
        *Counsel for Petitioner*

Carolyn P. Short, Esq. (ARGUED)
Sara A. Begley, Esq.
Nipun J. Patel, Esq.
Brooke N. Wallace, Esq.
Reed Smith
1650 Market Street
2500 One Liberty Place

Philadelphia, PA 19103
*Counsel for Respondents*

PER CURIAM

Petitioner Madeline Apollo brought an action against her former employer alleging breach of contract, conspiracy, and civil rights violations. Chief Judge Petrese B. Tucker, the District Court Judge randomly assigned to the case, served on a civic board with several individuals involved in the matter, including Apollo herself. Apollo contends that the Judge abused her discretion when she determined that her service on the board did not require her recusal from Apollo's case. The Judge later dismissed five of the six counts in Apollo's complaint with prejudice. Apollo petitions this Court for a writ of mandamus that would reassign the matter to a different District Court judge and vacate the judgment of the District Court that partially granted the defendant's motion to dismiss.

For the reasons discussed below, we conclude that recusal was called for under the circumstances presented. We will therefore grant Apollo's petition for a writ of mandamus, vacate the order partially granting the motion to dismiss, and remand the matter with instructions that it be assigned to a different District Court judge.

I.

Apollo's lawsuit arose from her employment with the Pennsylvania Convention Center Authority ("PCCA"). The PCCA hired Apollo in 1991; in 1998 she became the organization's Chief Financial Officer ("CFO"). The PCCA terminated Apollo's employment on September 30, 2011. Apollo's amended complaint alleged breach of

2

contract, conspiracy, and violations of her civil rights in connection with her tenure as CFO and her subsequent termination. The amended complaint named as defendants the PCCA and its President and Chief Executive Officer, Ahmeenah Young. The case was randomly assigned to a District Court judge.

The potential conflict of interest that triggered Apollo's petition for a writ of mandamus arises from the District Court Judge's service as a member of the Board of Directors for the Avenue of the Arts, Inc. ("AAI"). Apollo also serves on AAI's Board of Directors. AAI seeks to "reinvigorate" the Avenue of the Arts as a cultural center of Philadelphia and, to that end, works closely with businesses in the district. The Pennsylvania Convention Center, run by the PCCA, is a business in the district and has a designated representative on AAI's board. Apollo represents that the PCCA provides AAI with direct monetary contributions.

Apollo filed her first complaint on October 25, 2011, and an amended complaint on December 12, 2011. Both Apollo and the Judge attended an AAI board meeting on December 13, 2011. On December 14, 2011, Karen Lewis, the Executive Director of the AAI Board, sent the following email to two fellow Board members. The subject was "Madeline Apollo":

> [The Judge] confidentially mentioned to me (after the Board meeting) that she had been assigned to Madeline Apollo's case — she is suing the PA Convention Center. Last year we kept Madeline on, to see where she landed — could this pose a problem for us? When we last spoke Madeline was working at the Rock School. When we phoned to get an email address, we were told she hadn't worked there since May of this year. We now have a PA Convention Center representative, Carol Hunt[,] and having Madeline on the

3

> Board could be awkward[1] for her and Judge Tucker. What are your thoughts? We could discuss this on the call next week.
>
> FYI — we have received a Board contribution from the PA Convention Center.

Two potential witnesses in Apollo's case also sit on the Board — Carol Hunt, the PCCA's Director of Finance, and Michael Horsey, managing partner of Mitchell & Titus, LLP, the PCCA's outside auditor. Apollo's petition to this Court emphasizes that defendant Young selected Hunt to sit on AAI's Board. On February 10, 2012, AAI's Board offered Apollo the option to take a temporary leave of absence from the Board that would last until the expiration of her term. Apollo declined. The Judge has since taken a leave of absence from the Board.[2]

On February 27, 2012, Apollo filed a motion requesting that the Judge disqualify herself from the case. After a March 2012 hearing, the Judge denied the request for recusal. Apollo moved for reconsideration. The Judge denied that motion on May 29, 2012. The Judge partially granted the Pennsylvania Convention Center's motion to dismiss Apollo's amended complaint on June 20, 2012, dismissing with prejudice the counts of Apollo's complaint that alleged breach of contract, entitlement to relief based on promissory estoppel, procedural due process violations, substantive due process violations, First Amendment retaliation, and civil conspiracy in violation of 42 U.S.C. §

---

[1] The Judge denies that she ever expressed to anyone that she felt awkward about her board service with respect to Apollo's case.

[2] It is unclear from the record before the Court when the Judge's leave of absence began and how long it lasted. The AAI's website still lists both the Judge and Apollo as members of the Board of Directors. See Avenue of the Arts, http://www.avenueofthearts.org/about_staff_board.asp (last visited Aug. 8, 2013).

4

1983. The Judge denied the motion to dismiss with respect to Apollo's equal protection claim.

Apollo now petitions this Court for a writ of mandamus that would disqualify the District Court Judge from the case. Apollo's petition alleges that the Judge's status as an AAI board member creates the appearance of partiality because, among other reasons, AAI promotes the business interests of the PCCA and the PCCA donates money to AAI. Apollo argues that the Judge's position on a board "whose mission it is to promote the interest of a Defendant" creates the appearance of bias. Apollo Reply Br. 8 (emphasis omitted). The PCCA replies that Apollo has not clearly established her right to mandamus, that the Judge's service on AAI's board would not create the appearance of partiality in the eyes of a reasonable observer, that AAI does not have a special relationship with the PCCA, that case law does not support recusal based on "coincidental" connections, and that professional interaction with potential witnesses does not mandate disqualification and would not cause a reasonable person to question the Judge's impartiality.

The District Court Judge points out that she is currently on a leave of absence from the AAI Board, that "[t]he mere existence of some degree of relationship with an involved party is an insufficient basis for recusal," that her connection to the PCCA via the AAI is too remote to trigger concerns about bias, that the AAI Board does not promote the Convention Center, and that her service on the AAI Board with Apollo and other witnesses made them "nothing more than mere acquaintances."

II.

5

## A.

When a petition for a writ of mandamus contests a district court judge's denial of a motion for self-disqualification, we will review that decision for abuse of discretion. In re Kensington Int'l, Ltd., 368 F.3d 289, 300-01 (3d Cir. 2004). Because 28 U.S.C. § 455(a) mandates disqualification when "certain grounds are present," the district court judge only exercises discretion "to determine if the facts asserted as comprising bias, a forbidden financial interest, kinship, or the appearance of partiality bring the trial court judge within the disqualifying definition." Kensington, 368 F.3d at 301 n.12 (quotation marks omitted).

This Court has the authority to issue "all writs necessary or appropriate." 28 U.S.C. § 1651(a). A court may issue a writ only when the petitioner lacks another adequate means to obtain the relief sought and demonstrates that the right to the writ is "'clear and indisputable.'" Haines v. Liggett Grp., Inc., 975 F.2d 81, 89 (3d Cir. 1992) (quoting Kerr v. U.S. Dist. Court, 426 U.S. 394, 403 (1976)). Mandamus is the "proper means" for a Court of Appeals to a review a district court judge's denial of a motion to self-disqualify pursuant to § 455(a). Alexander v. Primerica Holdings, Inc., 10 F.3d 155, 163 (3d Cir. 1993).

## B.

"Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). Section 455(a) invites an objective inquiry: "whether a reasonable person, with knowledge of all the facts, would conclude that the judge's impartiality

might reasonably be questioned." Kensington, 368 F.3d at 301. Courts will look not to "the reality of bias or prejudice" but rather to the appearance of partiality. Liteky v. United States, 510 U.S. 540, 548 (1994); see also Kensington, 368 F.3d at 302 ("A party moving for disqualification under § 455(a) need not show actual bias because § 455(a) concerns not only fairness to individual litigants, but, equally important, it concerns 'the public's confidence in the judiciary, which may be irreparably harmed if a case is allowed to proceed before a judge who appears to be tainted." (quotation marks omitted)). Section 455(a) addresses the rights of individual litigants and seeks to promote public faith in the judiciary. United States v. Kennedy, 682 F.3d 244, 258 (3d Cir. 2012) ("Because § 455(a) aims not only to protect both the rights of the individual litigants, but also to promote the public's confidence in the judiciary, our analysis focuses on upholding the appearance of justice in our courts.").

When assessing a motion for disqualification under § 455(a), it is "critically important . . . to identify the facts that might reasonably cause an objective observer to question [the district court judge's] impartiality." Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. 847, 865 (1988). In particular, we will examine the degree and scope of the district judge's association with the parties involved in the litigation before her.

The Supreme Court has addressed a situation similar to the one we consider here. In Liljeberg, a district court judge sat on a board that had an interest in the outcome of the litigation before him. Id. at 850. The underlying litigation in that case revolved around the site for a hospital that Liljeberg proposed to build. Liljeberg negotiated with two parties about the formation and construction of the hospital — Loyola University and

7

Hospital Affiliates International ("HAI"), the corporate predecessor of the eventual plaintiff.  Id. at 853-54.  Liljeberg entered into an agreement with HAI, but a dispute arose.  Id. at 854.  HAI sought a declaratory judgment and while the case was pending, Liljeberg re-entered negotiations with Loyola regarding the hospital project.  Id. at 855-56.  Liljeberg prevailed in the district court.  While the matter was still before the district court, Liljeberg entered into an agreement with Loyola that would likely be voided if he did not succeed in the pending action.  Id. at 856-57.  After HAI's successor corporation learned that the district court judge had an interest in Loyola, it moved to vacate the judgment.  After a remand to determine the scope of the judge's interest in Loyola, the Court of Appeals for the Fifth Circuit vacated the judgment and held that the judge's interest in Loyola demanded recusal pursuant to § 455(a).  Health Servs. Acquisition Corp. v. Liljeberg, 796 F.2d 796, 803 (5th Cir. 1986).

The Supreme Court affirmed.  Liljeberg, 486 U.S at 862.  The facts of the case, the Supreme Court concluded, "create[d] precisely the kind of appearance of impropriety that § 455(a) was intended to prevent."  Id. at 867.  The judge, the Court found,  should have recused himself at the earliest opportunity; his refusal to do so resulted in "burdensome" and "protracted" proceedings about his denial of the disqualification motion.  Id. at 866.  There was a "greater risk of unfairness," the Court held, in upholding the potentially conflicted judge's order than in allowing a "new judge to take a fresh look at the issues."  Id. at 868.  Vacating the judgment, the Court reasoned, promoted fairness to the litigants and would not impose a special hardship on the parties.  Id. at 868-69.

8

The Court in <u>Liljeberg</u> considered a situation in which "the judge's putative fiduciary interest in the outcome of the litigation, as being a member of the . . . board, conflicted with his judicial obligation to be free of actual and perceived impartiality." <u>Johnson v. Carroll</u>, 369 F.3d 253, 262 (3d Cir. 2004). When a presiding judge has a lesser connection to the involved entities, the risk of perceived partiality subsides as well. For instance, the Court of Appeals for the Sixth Circuit considered a situation in which a district judge presiding over litigation against the Michigan Board of Regents was an alumnus of the University of Michigan's Law School, a volunteer fundraiser for the Law School many years before, and a member of the Law School's Committee of Visitors. <u>Easley v. Univ. of Mich. Bd. of Regents</u>, 906 F.2d 1143, 1145 (6th Cir. 1990). The Court of Appeals, "out of an abundance of caution," remanded the matter to a different district judge to explore the nature of the first judge's affiliation with the University and found no risk of perceived bias. <u>Id.</u> at 1145-47. The Court of Appeals agreed, concluding that the "amicable feelings" that the judge undoubtedly had for his alma mater did not generate an appearance of partiality that would require recusal. <u>Id.</u>; <u>see also</u> <u>Nachshin v. AOL, LLC</u>, 663 F.3d 1034, 1041 (9th Cir. 2011) (holding that it was not abuse of discretion to deny a disqualification motion when a judge's husband sat on a board of a proposed cy pres beneficiary whose charitable works could benefit from the case); <u>McCann v. Commc'ns Design Corp.</u>, 775 F. Supp. 1535, 1544 (D. Conn. 1991) (denying a motion for disqualification when a corporate parent of a defendant in the action contributed $5000 to Yale University over four years and the presiding judge was a trustee of Yale and his wife a professor of law there).

9

Judges are often active members of their communities.  As a result, tangential connections to the individuals and entities involved in a particular case are not uncommon.  See Home Placement Serv., Inc. v. Providence Journal Co., 739 F.2d 671, 675-77 (1st Cir. 1984) (explaining that "[a]ll judges come to the bench with a background of experiences, associations and viewpoints," and that "[t]his background alone is seldom sufficient in itself to provide a reasonable basis for recusal" (quotation marks omitted)); see also Fletcher v. Conoco Pipe Line Co., 323 F.3d 661, 665 (8th Cir. 2003) (explaining that "a court will deny a recusal claim alleging no more than a friendship between a judge and a witness because 'the fact that a judge is a friend of a witness does not ordinarily warrant an inference that the judge would be predisposed to credit that witness' testimony'"); Parrish v. Bd. of Comm'rs, 524 F.2d 98, 102, 104 (5th Cir. 1975) (concluding that a judge's "acquaintance with some of the defendants and counsel" did "not exceed what might be expected as background or associational activities with respect to the usual district judge").  However, at some point, the scope of a judge's involvement threatens the perceived impartiality of the judiciary that § 455(a) seeks to protect.  For instance, in Home Placement Service, a litigant suing a newspaper sought recusal of the presiding district court judge because, while the matter was pending, the defendant newspaper had interviewed the judge and written an article about the judge's home.  739 F.2d at 675-77.  The Court of Appeals for the First Circuit held that such circumstances would cause a reasonable person to doubt the judge's impartiality and required recusal under § 455(a).  Id. at 676-77.

10

Similar grounds for concern exist in the case currently before us. First, we note that Apollo moved for recusal before the Judge had issued any substantive rulings in Apollo's case. Moreover, the Judge's connections to the litigation before her were numerous. She served on a civic board, the AAI, that received financial support from the defendant, the PCCA. The Judge's service on this board — despite an apparent temporary leave of absence while the litigation was before her — brought her into regular contact with numerous individuals involved in Apollo's lawsuit. A key witness, Carol Hunt, also served on AAI's board as the PCCA's designee, as did the managing partner of the PCCA's outside auditor, Mitchell & Titus. Apollo's complaint alleged, in part, that the defendant's conduct prevented her from providing full and accurate information to Mitchell & Titus. The plaintiff also served on the Board with the Judge. Standing alone, each one of these connections might not demand recusal. Considered together, however, the scope of the Judge's involvement with those involved in the litigation bring the situation before us closer to the circumstances considered in Liljeberg, where the board that the judge sat on had a relationship with a party involved in the litigation, than the facts considered in cases like Easley, where the court concluded that mere affinity for an organization would not imperil the judge's perceived neutrality.

While we find no evidence of actual bias on the part of the Judge, that is not our standard; instead we ask whether "the record suffices to establish that [the Judge's] impartiality may reasonably be questioned." Alexander, 10 F.3d at 163. We conclude that it may. That the Judge communicated this potential conflict to AAI's Executive Director only reinforces that conclusion. Given the Judge's awareness of this potential

11

conflict, and in light of the fact that the judiciary thrives not only with the absence of actual bias but also with the absence of perceived partiality, the proper course in this case would have been recusal. See id. at 162 (observing that the "public's confidence in the judiciary" may suffer "irreparabl[e] harm" if a case proceeds before a judge who does not appear neutral (quotation marks omitted)). We thus hold that the Judge's denial of Apollo's motion for disqualification violated § 455(a).[3]

When a judge does not self-disqualify in "any proceeding in which [her or] his impartiality might reasonably be questioned," we will order reassignment pursuant to § 455(a) itself or pursuant to our supervisory powers as codified in 28 U.S.C. § 2106. Kennedy, 682 F.3d at 258 (alteration in original) (quotation marks omitted). The Court will review requests for reassignment under § 2106 under an "appearance of impartiality" standard similar to the standard applied to § 455(a) requests. United States v. Bergrin, 682 F.3d 261, 282 (3d Cir. 2012) (quotation marks omitted). Under either option, "reassignment is an exceptional remedy, one that we weigh seriously and order sparingly," and appropriate only when, considering the totality of the circumstances, "a reasonable observer, with knowledge of this case, could question the impartiality and neutrality of the proceedings." Kennedy, 682 F.3d at 258, 260. We reluctantly conclude that reassignment is required here. While we do not doubt the Judge's ability to preside impartially over Apollo's action against the PCCA, the accumulation of her connections

---

[3] Because we resolve this case under § 455(a), we need not address the PCCA's argument that Apollo waived her argument pursuant to a different section of the recusal statute, § 455(b)(4), by failing to raise that ground in her original petition for a writ of mandamus.

to the litigation endangers the appearance of neutrality that is essential for the judiciary to retain the public's trust. Pursuant to our powers set forth in 28 U.S.C. § 1651(a) and 28 U.S.C. § 2106, we will therefore vacate the judgment of the District Court partially granting the defendant's motion to dismiss and remand the matter for rehearing before a different judge. See Alexander, 10 F.3d at 167-68.

III.

For the reasons expressed above, we will grant Apollo's petition for a writ of mandamus, vacate the order partially granting the motion to dismiss, and remand the matter with instructions that it be assigned to a different District Court judge.